COMMONWEALTH *vs.* CHARLES CUFFIE, THIRD.

Hampden. January 6, 1993. - March 19, 1993.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Jury and Jurors. Practice, Criminal,* Conduct of juror, Interrogation of jurors, New trial, Instructions to jury. *Evidence,* Relating to deliberation by jurors. *Controlled Substances. Joint Enterprise. Identification.*

The fact that one juror in a criminal case reported to the judge that another juror had said that, while the trial was in progress, she had made an independent visit to the location of the crime "to check it out" required a new trial where, rather than allowing the juror who had reportedly visited the scene to be interviewed in the presence of counsel to determine whether the visit had taken place, as the judge should have done, he inquired instead into the deliberative processes of the jury by probing the potentially influenced juror as to how much she had been influenced by the other juror. [634-638]

At the trial of a defendant on drug trafficking and conspiracy charges, where the evidence, viewed most favorably to the Commonwealth, showed that the defendant had been distributing an inventory of crack cocaine held by another individual, knowledge of the quantity of the drug carried by the other individual was properly imputed to the defendant. [638-639]

On retrial of a criminal case in which the admissibility of the defendant's identification had been based on a one-to-one confrontation, this court concluded that the defendant would be entitled to that portion of the pattern instruction recommended in *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 310-311 (1979), and omitted by the trial judge, which stated that "an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness"; in addition, this court, correcting a flawed reference in the *Rodriguez* instruction, set out a revised pattern instruction with regard to the time elapsed between a crime and a witness's identification of the defendant as the offender as a factor bearing on the reliability of the identification. [639-640]

INDICTMENTS found and returned in the Superior Court Department on May 10, 1989.

The cases were tried before *William W. Simons*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*Judith Ellen Pietras*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. In *Commonwealth* v. *Cuffie*, 33 Mass. App. Ct. 212 (1992), the Appeals Court affirmed the defendant's conviction of trafficking in cocaine in an amount of twenty-eight grams or more and of conspiracy to commit that offense. The Appeals Court rejected the defendant's claim that a new trial was required because one juror had reported to the judge that another juror had said that she had made an independent visit to the scene of the crime "to check it out."[1] We granted the defendant's application for further appellate review. We conclude that the juror misconduct requires a new trial. On the other issues in the case, we consider that the Commonwealth's evidence was sufficient to convict the defendant of the crimes with which he was charged, and we make a change in the pattern jury instruction set forth in *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979), on the subject of identification.

The background of the case is set forth at 33 Mass. App. Ct. at 213-214, as follows: "Taking the evidence in a view most favorable to the government, the jury could have found that Cuffie was a runner for a drug dealer named Brian Person. Cuffie and Person came under police surveillance as they sold cocaine in front of 189 Quincy Street, Springfield. Officer Ricky Moran of the Springfield police watched them from inside a car through binoculars at a distance somewhat less than 100 feet. After three transactions and about ten

---

[1] A previous trial of the defendant had ended in a declaration of mistrial because a juror had independently visited the scene of the crime. 33 Mass. App. Ct. 212, 213 (1992).

minutes of observation, the police made their move. They caught Person, but Cuffie managed to flee. Officer Moran broadcast to other surveillance units in the area a description of Cuffie: black male, five feet, nine to ten inches tall, wearing a tan sheepskin three-quarter length jacket with fur trim. Another police officer, Daniels, spotted a man who answered the description running in an alley less than one-tenth of a mile from the place where (in front of 189 Quincy Street) he had originally been watched by Officer Moran. Daniels took the defendant to that place, and Moran there identified the defendant as the man whom he had observed apparently selling drugs with Person. There were 1.32 grams of crack cocaine in the defendant's right rear trouser pocket.

"Cuffie's defense was misidentification: the police had the wrong man. He testified that on the day of his arrest he had been riding around 'nowhere special' with a friend, Richard Parker, who also so testified. At around 5 P.M., he had gone to a Mr. Fish establishment, located near where he was arrested, to buy a box of chicken wings. He was hurrying the chicken wings to a cousin who lived nearby, indeed, just past the alley where the police unaccountably swooped down upon him. Person, the alleged dealer, was a total stranger to him, Cuffie said. The cocaine in Cuffie's back trouser pocket was for his own use. At the time of Cuffie's trial, Person was already serving a mandatory prison sentence on a conviction of trafficking in cocaine arising out of the transactions in which the police charged Cuffie had participated. Person testified that he did not know Cuffie and that Cuffie had nothing to do with his drug dealing that day or at any other time."

1. *Juror misconduct.* At the close of the first and second days of trial (deliberations having begun), the judge instructed the jury not to take any "private views" of the scene of the crime. (Earlier the judge had denied a motion by the defendant asking that the jury be taken on a view.) On the third day, the jury returned their verdicts of guilty and were discharged. While the judge waited for information from a probation officer pertaining to sentencing, a court officer told

the judge that one juror had remained behind and wanted to speak with him.

The judge met with the juror, whom we identify as juror A, without counsel being present. The juror told the judge that another juror (whom we identify as juror B) had said that "she went to the scene to check it out." Juror A also stated that juror B had told other jurors that "she went herself," and that the unauthorized visit had occurred most likely on the evening of the first day of trial. The judge then probed juror A on the extent of juror B's influence during deliberations. The examination is set forth in the margin.[2]

After the interview, the prosecutor and trial counsel were advised by the judge of his meeting with juror A. Relying on *Commonwealth* v. *Fidler*, 377 Mass. 192, 201-204 (1979), trial counsel promptly moved for permission to interview juror B to document, in connection with a motion for new trial,

---

[2]THE JUDGE: "Did you feel that [juror B] took some lead in the discussion and utilized information that she had taken on the view to sway one of the other jurors?"

JUROR A: "I don't really know if she did or not."

THE JUDGE: "Did you feel that you were influenced by what she said?"

JUROR A: "A little bit. She was — like persuasive. I'd say and her opinion was, you know —"

THE JUDGE: "But insofar as the scene?"

JUROR A: "No."

THE JUDGE: "You're indicating that wasn't brought up, is that right?"

JUROR A: "No."

THE JUDGE: "Having the facts, I don't want to get into details of discussions because I'm not permitted to. The fact that she was or was not persuasive, is not important to me. Right now, whether in doing that, was she utilizing any information that she had by reason of going there? Do you understand me?"

JUROR A: "I'm not sure. I'm nervous."

THE JUDGE: "Are you trying to suggest in the course of deliberations, this juror used information that she had by going to the scene?"

JUROR A: "It doesn't really seem like she did, no."

THE JUDGE: "Is there anything else you want to tell me?"

JUROR A: "No."

THE JUDGE: "All right. Thank you for bringing this to my attention."

whether the juror had taken an unauthorized view. The motion was subsequently denied by the judge.[3] This was error.

The colloquy between the judge and juror A, and the judge's memorandum of decision denying the defendant's motion to interview juror B lead us to conclude that the judge credited the report of juror A. The judge had before him, then, a "significant" or "considerable" indication that an extraneous matter (unauthorized visit to site of alleged crime by juror) had infected the jury's deliberations. *Commonwealth v. Dixon*, 395 Mass. 149, 151 (1985). *Commonwealth v. Fidler, supra.* See also *Markee v. Biasetti*, 410 Mass. 785 (1991) (granting new trial where evidence showed that at least two, and possibly four, jurors visited scene of accident in motor vehicle tort case). "Competent evidence that *one*, rather than some or all jurors, had access to potentially prejudicial information unfiltered by the trial process may suffice to invalidate a verdict" (emphasis added). *Commonwealth v. Hunt*, 392 Mass. 28, 40 (1984). In these circumstances, juror B should have been interviewed in the presence of counsel, see *Commonwealth v. Mahoney*, 406 Mass. 843, 856 (1990),[4] to determine whether the visit by

---

[3]In his memorandum of decision explaining the basis for denying the motion, the judge stated the following:

> "[Juror B] did not offer any information from her visit to the scene, to the other jurors during deliberations. The scene in question is a street in the City of Holyoke that is thickly settled and utilized for through traffic. It is a heavily used public street.

> "The threshold question to be resolved is whether there is any reasonable basis to conclude that the alleged private view taken by one juror resulted in any improper or extraneous influence as to any other juror. I find there is no basis to believe that there was any 'extraneous disturbing influence on the jury.'

> "While I do not condone any unauthorized view, it is clear that a view of a busy public street did not result in any prejudice to the defendant."

[4]A judge has discretion to choose between interviewing the juror, or authorizing counsel to conduct the interview. *Commonwealth v. Dixon*, 395 Mass. 149, 153 (1985). *Commonwealth v. Fidler*, 377 Mass. 192, 203 (1979).

juror B had taken place.[5] Assuming that it had, an interview could have established the extent of that juror's activity at the scene, a matter on which we now can only speculate. An interview could also have established what juror B might have communicated to her fellow jurors.

*Commonwealth* v. *Fidler, supra,* provides that, once it has been established that information not introduced in evidence was available to the jury, "the judge must focus on the probable effect of the extraneous facts on a hypothetical average jury." *Id.* at 201. The burden is on the Commonwealth to "show beyond a reasonable doubt that [the defendant] was not prejudiced by the extraneous matter." *Id.* A juror's unauthorized visit to a location relevant to a case is not per se prejudicial, but our cases establish that it is a potentially serious matter. See *Markee* v. *Biasetti, supra* at 788; *Berlandi* v. *Commonwealth,* 314 Mass. 424, 451-452 (1943); *Harrington* v. *Worcester, Leicester, & Spencer St. Ry.,* 157 Mass. 579, 582-583 (1893). The judge assumed for purposes of the defendant's motion to interview juror B that the alleged visit had taken place. He concluded, however, that "it is clear that a view of a busy public street did not result in any prejudice to the defendant." For reasons explained in the margin, we do not think the judge had sufficient information available to him to support this conclusion to the requisite degree of certainty.[6]

---

[5]We do not accept the defendant's contention that the judge found as a fact that juror B had visited the scene of the alleged crimes. Denying the defendant's motion to interview juror B, the judge spoke of the "juror who *may* have taken an unauthorized view," and of "the *alleged* private view."

[6]The defendant claimed mistaken identity. He testified that he had just arrived in the neighborhood and was on the way to his cousin's house when he was arrested. On cross-examination of Officer Moran, who observed and identified the defendant, defense counsel focused on the conditions under which the officers conducted their surveillance and the witness's lack of memory concerning the appearance of the scene and the individuals to whom the defendant distributed narcotics. Defense counsel's closing argument stressed the uncertainty of an identification made from 100 feet away, at 5:30 P.M. in early February, through an automobile's tinted windows. He also pointed out to the jury what he perceived to be certain flaws

Instead of determining whether juror B's visit to the scene occurred, the judge, contrary to what should have been done, inquired into the deliberative processes of the jury. As a result, we are left with a record that requires a new trial. Responding to questions from the judge directed at her subjective thought processes during deliberations, see note 2, *supra*, juror A understandably was equivocal and somewhat reticent. Beyond doubt, juror A was influenced by juror B's opinions on the merits of the case, and she appears to have been affected by her belief that juror B had visited the scene described during the witnesses' testimony. The defendant was entitled to receive a trial by jury whose members are impartial, see *Commonwealth* v. *Laguer*, 410 Mass. 89, 97 (1991), and whose deliberations were unaffected by a juror's possible knowledge of extraneous matters. See *Commonwealth* v. *Hunt, supra* at 40; *Commonwealth* v. *Fidler, supra* at 197. The judge, having ventured into the forbidden area of the deliberative process of juror A, cannot ignore the fruits of his excursion. We conclude that the defendant is entitled to a new trial. We turn to the two remaining issues raised by the defendant, as they bear on any subsequent proceedings.

2. *Sufficiency of the evidence as to trafficking.* When he was arrested, the defendant had in his pocket crack cocaine weighing 1.32 grams. Person was found with 27.55 grams of the same substance in his possession. The defendant contends that this evidence was insufficient as matter of law to support a conviction for trafficking in twenty-eight grams or more of cocaine, see G. L. c. 94C, § 32E (*b*) (2) (1990 ed.), because the evidence did not prove that he knew the amount of co-

---

in the description of the defendant broadcast by the police. Whether the police had the right man was the main issue at the trial.

Assuming the visit took place, juror B might have visited the scene for the express purpose of determining for herself how well Officer Moran could see from within an automobile. Whether or not she went to the scene for that purpose, she would possess extraneous information by which to evaluate the testimony of the officer on this point. Furthermore, to the extent she communicated to her fellow jurors her superior knowledge of conditions at the scene, her opinion well might carry undue weight during deliberations.

caine carried by Person. We agree with the Appeals Court that the evidence is sufficient to sustain the trafficking conviction as charged.

Viewing the evidence, and inferences to be drawn therefrom, in the light most favorable to the prosecution, a finder of fact could reasonably conclude that Cuffie was engaged in distributing the inventory of crack cocaine held by Person. This is sufficient to establish criminal liability for the offense of trafficking as a joint venturer. See *Commonwealth v. Sabetti*, 411 Mass. 770, 779-781 (1992) (liability for trafficking predicated on knowing and intentional assistance in distribution of requisite amount of narcotics; prosecution need not prove defendant's actual knowledge of amount of narcotics possessed by other joint venturers).

3. *Jury instruction on identification.* The judge delivered a jury instruction on identification based on the pattern instruction set out in the appendix to *Commonwealth v. Rodriguez*, 378 Mass. 296, 310-311 (1979). The defendant claims two errors in the charge as delivered.

First, the defendant objects to the omission of that portion of the model charge which provides as follows: "You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness."

In this case, Officer Moran observed an individual involved, with Person, in behavior that suggested the distribution of narcotics. The individual left the area as the officers moved in from their observation point to undertake inquiries. Several moments after the individual left the area, the defendant "was returned to the scene for [Officer Moran] to identify as the subject that we had broadcast a description of at which time" Officer Moran identified him. The admissibility of the officer's identification of the defendant, based on a one-on-one confrontation, was not challenged. However, we have recognized that such identifications may be less reliable than identifications made where the witness picks the defendant out of a lineup, see *Commonwealth v. Freiberg*, 405

Mass. 282, 295, cert. denied, 493 U.S. 940 (1989), and the pattern instruction addresses this concern. On any retrial, the defendant is entitled to this portion of the pattern instruction.

The defendant also complains of the language in *Rodriguez,* set out in the margin,[7] as improperly suggestive. The Appeals Court addressed a similar argument in *Commonwealth* v. *Fitzpatrick,* 18 Mass. App. Ct. 106, 111 (1984). While declining to reverse the conviction in *Fitzpatrick,* the court observed that the language of the instruction "may lead some jurors to draw an unfair inference," *id.,* and recommended a change to the instruction. We agree that the suggested change should be made. We set out the revised pattern instruction in its entirety in the appendix to this opinion, emphasizing the newly adopted language.

4. The judgments are reversed, the verdicts set aside, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

APPENDIX.

"One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of proving identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

"Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

---

[7]"You may also consider the length of time that lapsed between the occurrence of the crime and the *next* opportunity of the witness to see the *defendant,* as a factor bearing on the reliability of the identification" (emphasis added). *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 311 (1979).

"In appraising the identification testimony of a witness, you should consider the following:

"Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

"In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight — but this is not necessarily so, and he may use other senses.

"Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care.

"*You may also consider the length of time that lapsed between the occurrence of the crime and the opportunity of the witness, some time after the occurrence of the crime, to see and identify the defendant as the offender, as a factor bearing on the reliability of the identification.*

"You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.

"You may take into account any occasions in which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with his identification at trial.

"Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

"I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."