## COMMONWEALTH vs. WAYNE C. TASSONE.

No. 10-P-1923.

Berkshire. October 11, 2012. - January 29, 2013.

Present: KANTROWITZ, SIKORA, & RUBIN, JJ.

Further appellate review granted, 465 Mass. 1102 (2013).

*Robbery. Assault and Battery. Deoxyribonucleic Acid. Constitutional Law,* Confrontation of witnesses. *Evidence,* Identity, Expert opinion, Grand jury proceedings. *Witness,* Expert. *Grand Jury. Practice, Criminal,* Confrontation of witnesses, Assistance of counsel.

At a criminal trial, the admission in evidence of the expert testimony of a chemist comparing the results of an analysis of deoxyribonucleic acid (DNA) taken from the defendant prepared by the State police crime laboratory with the results of an analysis of DNA on eyeglasses found at the scene of a robbery prepared by a commercial DNA testing facility did not violate the defendant's constitutional right to confront witnesses against him. [198-200]
There was no merit to a criminal defendant's claims that, at trial, a deoxyribonucleic acid profile was used improperly [200]; that the integrity of grand jury proceedings was impaired [200-201]; or that his counsel provided ineffective assistance by failing to object to alleged errors in the jury instructions or in a witness's response to a question [201].

INDICTMENTS found and returned in the Superior Court Department on July 24, 2009.

The cases were tried before *John A. Agostini,* J.

*William W. Adams* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

RUBIN, J. The defendant was convicted of unarmed robbery and assault and battery arising out of the robbery of a variety store in Pittsfield. The defendant's primary defense was mistaken identity. A pair of eyeglasses, identified as the defendant's, was found at the scene. His counsel argued that the defendant's brother, who owned a similar pair of eyeglasses, had committed the robbery. The defendant's primary argument here is a challenge under the confrontation clause of the Sixth Amendment to

the United States Constitution, made applicable to the States through the Fourteenth Amendment, *Pointer* v. *Texas*, 380 U.S. 400, 403 (1965), to the expert testimony here of a chemist at the State police crime laboratory comparing the results of an analysis of deoxyribonucleic acid (DNA) taken from the defendant prepared by the State police crime laboratory with an analysis of DNA found on the eyeglasses prepared by Orchid Cellmark (Cellmark), a commercial DNA testing facility in Dallas, Texas. The argument in essence is that testimony by an expert comparing these two DNA analyses is improper, and that the confrontation clause requires that the defendant have an opportunity to cross-examine the analysts who prepared these DNA reports.

This case is controlled by the United States Supreme Court's recent decision in *Williams* v. *Illinois*, 132 S. Ct. 2221 (2012) (*Williams*). In *Williams*, the Court decided an almost identical case in which an expert testified comparing a DNA profile from a sample of the defendant's blood with a DNA report generated by Cellmark from semen found on the victim of a rape. The Supreme Court was divided in that case. A plurality of four justices concluded that the expert did not testify to the truth of the underlying analysis, and that there is thus no confrontation clause issue in circumstances such as this.[1] Because the expert in this case did not testify to the truth of the underlying analyses any more than the expert in *Williams*, under the reasoning of the plurality opinion in *Williams*, there is no confrontation clause issue in this case.

The fifth member of the Supreme Court majority, Justice Thomas, filed an opinion concurring only in the judgment. He concluded that the Cellmark report in that case lacked the requisite indicia of solemnity and formality in order to be characterized as "testimonial" for purposes of Sixth Amendment analysis. *Williams*, 132 S. Ct. at 2260 (Thomas, J., concurring in the judgment). The defendant argues that the Cellmark report in the case before us is more solemn and formal than that at issue in the *Williams* case. In each case the report was signed

---

[1]The plurality also found that items not prepared with the primary purpose of accusing a targeted individual present no confrontation clause difficulty. *Williams*, 132 S. Ct. at 2243. We need not address this "primary purpose" test in light of our conclusion stated in the text.

by two people who are described as having "reviewed" the analysis. To be sure, in the instant case one of them is called "analyst," the other "technical reviewer." By contrast, in the *Williams* case the two "reviewers" were identified as two directors of the laboratory. Nonetheless, where the certificate states only that these two people reviewed the analysis and not that either of them performed it, we see no material difference with respect to the testimonial nature of the report here as that concept was articulated by Justice Thomas in *Williams, supra*.[2]

We thus conclude that this question is controlled in all material respects by the judgment in *Williams*. We recognize that a majority of the Supreme Court rejected the analysis of the plurality on which that holding rests. See *id*. at 2265 (Kagan, J., dissenting) ("[I]n all except its disposition, [the plurality] opinion is a dissent: Five Justices specifically reject every aspect of its reasoning and every paragraph of its explication"). Five members of the Court specifically concluded that the evidence was offered for the truth of the underlying analysis. See *id*. at 2256 (Thomas, J., concurring in the judgment); *id*. at 2268 (Kagan, J. dissenting). But even if the plurality's reasoning might not therefore be relied upon in circumstances presented in some subsequent confrontation clause cases, where the facts before us are not materially distinguishable from those presented to the Supreme Court in *Williams*, it must follow from the judgment in that case, which turned on the Court's conclusion that the Cellmark report in that case was admissible, that the report here is admissible as well.[3]

---

[2]The record before us does not contain the report on the buccal swab. The defendant makes no specific argument with respect to that report and has not demonstrated that it has greater indicia of solemnity and formality than the Cellmark report at issue in *Williams*.

[3]To spell this out a bit more, the divided opinions in *Williams* create a vote-cycling problem, a problem in which the outcome depends upon the order in which multiple questions are asked. See generally Arrow, Social Choice and Individual Values (rev. ed. 1963). If a court hearing a case like this were to ask first, "Does an expert, testifying as the expert did here, testify to the truth of the analysis contained in the underlying report?" the answer (based on the five votes in *Williams* rejecting the plurality analysis) might well be yes. Since only one Justice, Justice Thomas, concluded that the report in *Williams* lacked the requisite formality and solemnity to be deemed "testimonial," such a court might ultimately reach a conclusion that the introduction of the report here violated the confrontation clause.

Nonetheless, where a (different) majority of the Court in *Williams* has ad-

Consequently, the defendant's argument fails.[4]

The analysis of the defendant's other claims is more straightforward. The defendant argues that the use of a DNA profile contained in the State's combined DNA index system (CODIS) database could be used only for investigative purposes and was improperly used in his prosecution. The basis of this claim is a letter from the State police crime laboratory linking the DNA profile from the eyeglasses to a preexisting profile of the defendant in the CODIS database, citing G. L. c. 22E, § 10,[5] and stating that the information the letter contained could only be used for investigative purposes.

Even assuming that the letter correctly described a restriction on the use to which the DNA profile of the defendant contained in the CODIS database prior to the prosecution here could be put, something we need not and do not decide, there was no violation. At trial, that CODIS profile was not used. Rather, as described above, a profile generated from a buccal swab taken from the defendant after his arrest was compared to the profile generated from the DNA taken from the eyeglasses and reflected in the Cellmark report.

The defendant next raises a claim concerning the proceedings in the grand jury. He states that the integrity of the grand jury was impaired by the prosecutor's excessive use of leading questions, by statements attributing uncharged thefts to the defendant, and by the disclosure that the defendant had recently been incarcerated. The standard for determining whether such errors require dismissal of an indictment is whether they "probably influenced the grand jury's determination to hand up an indictment." *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621 (1986). In this case, the defendant is unable to demonstrate

---

dressed the specific question before us, holding that the confrontation clause does not bar admission of a report materially like the one before us in circumstances materially like the ones presented here, we are bound by the Court majority's answer to that question.

[4]We recognize that the Supreme Judicial Court now has before it at least two cases that may have implications for the Sixth Amendment question decided here. See *Commonwealth* v. *Greineder*, 458 Mass. 207 (2010), vacated and remanded, 133 S. Ct. 55 (2012); *Commonwealth* v. *Munoz*, 461 Mass. 126 (2011), vacated and remanded, 133 S. Ct. 102 (2012).

[5]General Laws c. 22E, § 10, describes how the director of the State police crime laboratory may use data in the State's DNA database.

under that standard his entitlement to dismissal. The evidence presented to the grand jury, including testimony that the clerk at the variety store had identified the defendant, that the eyeglasses left at the scene were identified as belonging to the defendant, and that the defendant had confessed to the crime, was so substantial that leading questions and evidence of unrelated bad acts would not have made a difference to the grand jury's decision to indict the defendant.

Finally, the defendant argues about two alleged errors to which he did not object at trial. The first is that at one point in the jury instructions the judge used the word "defendant" rather than "offender." Specifically he said, "The first [thing the jury should consider in appraising identification testimony] is whether you are convinced that the witness had the capacity and an adequate opportunity to observe the [d]efendant." See *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640 (1993) (adopting a revised identification instruction because such language may lead the jury to draw an unfair inference against the defendant). The second alleged error is that a witness, in response to a question, made a spontaneous statement from which the jury might have inferred the defendant was previously incarcerated.

The defendant frames his claims as ones of ineffective assistance of counsel. Whether viewed this way or simply as unpreserved claims of error, the defendant must demonstrate in essence that the underlying errors created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Azar*, 435 Mass. 675, 686-687 (2002) (standard for demonstrating that unobjected-to error requires reversal is essentially the same as that for demonstrating under the ineffective assistance of counsel test that an error of counsel deprived the defendant of a substantial ground of defense). In light of the overwhelming evidence of the defendant's guilt, including testimony from his fiancée that he confessed to her, the defendant has failed to demonstrate that the errors he alleges created a substantial risk of a miscarriage of justice.

*Judgments affirmed.*