## COMMONWEALTH *vs.* SAMUEL A. JACKSON, JR.

Worcester. November 9, 1994. - March 15, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Appeal, Assistance of counsel, Waiver, Instructions to jury. *Constitutional Law*, Assistance of counsel, Waiver of constitutional rights, Right of defendant in criminal case to act pro se. *Waiver. Robbery. Armed Assault in a Dwelling. Dangerous Weapon. Evidence*, Cross-examination, Identification, Photograph, Consciousness of guilt, Relevancy and materiality. *Identification.*

Discussion of rights waived and risks assumed by a criminal defendant proceeding pro se. [719-720]

At the trial of indictments, the defendant waived his right to effective assistance of counsel when he elected to proceed pro se and refused appointed counsel and standby counsel. [720-721]

At the trial of indictments at which the defendant elected to proceed pro se, the conduct of the trial judge and the prosecutor did not impair the defendant's right to represent himself in a fair proceeding. [721]

The court, noting that pro se defendants should be addressed with titles connoting equal respect to that afforded opposing counsel, concluded there was no substantial risk of a miscarriage of justice at a criminal trial in the judge's referring to the pro se defendant as "you" or in witnesses being allowed to refer to the defendant as "you" or by his first name, where the defendant himself asked questions in the same manner throughout his trial. [721-722]

At a criminal trial, there was no substantial risk of a miscarriage of justice in the judge's interruptions of the pro se defendant's cross-examination, which the record demonstrated was argumentative and repetitive, in order to attempt to explain to the defendant how to demonstrate that a witness had made a prior inconsistent statement. [722]

At the trial of indictments for armed robbery and armed assault with intent to commit a felony, the evidence of the defendant's apparently being armed with a gun when the crimes were committed was sufficient to warrant the judge's instructing the jurors that they were to determine whether the defendant was so armed. [722-725] O'CONNOR, J., dissenting.

An indictment for armed robbery that tracked the language of G. L. c. 277, § 79, sufficiently described the necessary mens rea ("intent to

rob") and the judge correctly denied the defendant's motion to dismiss the indictment for failure to state a crime. [725]

At a criminal trial, there was no substantial risk of a miscarriage of justice or abuse of discretion shown in the judge's properly excluding or curtailing the pro se defendant's repetitive or redundant questions on cross-examination. [725-727]

There was no error at a criminal trial in the judge's denial of the defendant's motion to suppress an out-of-court photographic identification and an in-court identification of the defendant by the victim, where the photographic identification procedure was not shown to be impermissibly suggestive. [727-730]

At a criminal trial, evidence that the defendant misrepresented his identity to a police officer the day after the assault and robbery of the victim was properly admitted as evidence of consciousness of guilt. [730-731]

At a criminal trial there was no substantial risk of a miscarriage of justice in the judge's instructing the jury that the (pro se) defendant's choice not to testify was not relevant to his guilt or innocence [731-732]; or in the judge's instructions on identification [732-733]; or in his omitting to instruct on consciousness of guilt [733-734].

INDICTMENTS found and returned in the Superior Court Department on April 4, 1991.

The case was tried before *Herbert F. Travers, Jr.*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Daniel J. Johnedis* for the defendant.

*William E. Loughlin*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. After a trial by jury, the defendant, Samuel A. Jackson, Jr., was convicted of armed robbery, armed assault in a dwelling house with intent to commit a felony, and assault and battery. The defendant appeals. We granted the defendant's application for direct appellate review. For the reasons stated in this opinion, we affirm the convictions. The facts are set forth in the discussion of the issues.

1. *Right to self-representation.* After the defendant was indicted, the court appointed counsel to represent the defendant. The defendant subsequently waived his right to counsel, electing to proceed pro se. The court then designated standby

counsel, who withdrew from the case three months later. The defendant assumed his own representation unassisted by standby counsel from that date forward.[1]

On appeal, represented by appellate counsel, the defendant argues that the conduct of the judge and the prosecutor at trial impaired his right to represent himself in a fair criminal proceeding. The defendant asserts that the judge interrupted his cross-examination of the victim unnecessarily. The defendant failed to object on the record to any of these interruptions.

The defendant further points to the prosecutor's use of statements elicited by the defendant on cross-examination, which were damaging to the defendant, as evidence that the prosecutor somehow "took advantage" of the defendant's pro se status.[2]

In addition, according to the defendant, the prosecutor's failure to counsel witnesses to refer to the defendant as "Mr. Jackson" rather than "Sam" or "you" and the prosecutor's failure to avoid leading or improper questions which elicited hearsay responses violated the prosecutor's duty to guarantee a fair proceeding. In sum, the defendant argues

---

[1]No issue of the defendant's competency to stand trial, to waive his right to counsel, or to represent himself has been raised. See *Godinez* v. *Moran,* 509 U.S. 389, 401 n.13 (1993) (courts not required "to make a competency determination in every case in which a defendant seeks . . . to waive his right to counsel. As in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence").

[2]The defendant makes much of the Commonwealth's several references to the following exchange between the defendant and the victim on cross-examination:

THE WITNESS: "I'm telling you categorically, Sam, I don't know if you had a blue hat on or not. To me it makes no difference."

THE DEFENDANT: "Why is that?"

THE WITNESS: "What in the hell difference does it make? You committed the crime, and you know it."

THE DEFENDANT: "I committed the crime and I know it. . . ."

While the victim's responses were damaging to the defendant, they were responsive to the wide-open questions the defendant employed on cross-examination. The prosecutor properly could argue this evidence in his summation.

that the conduct of the judge and the prosecutor prejudiced him before the jury and denied him an opportunity to represent himself in a fair proceeding. The defendant did not object to many of the issues urged on appeal. Although "we may consider issues on appeal not raised at trial . . . our power to do so is rarely exercised, and is exercised only in response to a serious and obvious error creating a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967)." *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987).

A. *Rights waived and risks assumed by pro se defendants.* The right to assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution is premised on "a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Johnson* v. *Zerbst*, 304 U.S. 458, 462-463 (1938). But because "[t]he defendant, and not his lawyer or the State, will bear the personal consequences of a conviction . . . the defendant . . . must be free personally to decide whether in his particular case counsel is to his advantage." *Faretta* v. *California*, 422 U.S. 806, 834 (1975). *Commonwealth* v. *Conefrey*, 410 Mass. 1, 10-11 (1991). Accordingly, a defendant may waive his right to the "guiding hand of counsel," *Powell* v. *Alabama*, 287 U.S. 45, 69 (1932), and exercise his right of self-representation. *Commonwealth* v. *Mott*, 2 Mass. App. Ct. 47 (1974). Article 12 of the Massachusetts Declaration of Rights.

Despite their lack of legal training, pro se litigants are held to the same standards as practicing members of the bar.[3] *Commonwealth* v. *Barnes*, 399 Mass. 385, 392 (1987).

---

[3]The practice of holding pro se litigants to the same rules as practicing members of the bar is not unique to Massachusetts. See, e.g., *State* v. *Cornell*, 179 Ariz. 314, 328 (1994) (represented and pro se defendants waive claim of error by failing to object at trial); *People* v. *Bolton*, 859 P.2d 311, 318 (Colo. App. Ct. 1993) ("by electing to proceed pro se, a

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta, supra* at 835.

The defendant waived his right to effective assistance of counsel when he refused appointed counsel and standby counsel. At the time of each of the incidents outlined above, the defendant did not object on the record. His tactical and

---

defendant is subject to the same rules, procedures, and substantive law as a licensed attorney"); *State* v. *Furrow,* 424 A.2d 694, 696 (Me. 1981) (pro se litigants are not protected from "the consequences of the established principles of appellate review" nor are they "excused from complying with procedural rules"); *State* v. *Gaudette,* 431 A.2d 31, 32 (Me. 1981) (pro se litigants not entitled to "special consideration in the application of the obvious error rule, and [the appellate court's] decision is in no way based on the absence of counsel at trial"); *State* v. *Richards,* 495 N.W.2d 187, 195 (Minn. 1992), quoting *Chambers* v. *Mississippi,* 410 U.S. 284, 302 (1973) ("accused 'must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence' "); *In re Brewster,* 115 N.H. 636, 638 (1975) ("those appearing pro se are required to abide by and are bound by the same rules of procedure as are those with counsel, and the court is not required to act as counsel for them even in criminal cases") (per curiam); *Commonwealth* v. *Abu-Jamal,* 521 Pa. 188, 200 (1989), cert. denied, 498 U.S. 881 (1990) (pro se defendant "subject to the same rules of procedure as is a counseled defendant"); *State* v. *Drobel,* 815 P.2d 724, 736 (Utah Ct. App. 1991) (noting defendant's "mistaken assumption that his self-representation right carries with it certain privileges not afforded to pretrial detainees who are represented by professional counsel"); *State* v. *Sheppard,* 172 W. Va. 656, 670 (1983) ("An accused who asserts his right to represent himself without the assistance of counsel is required to comply with all the technical rules of procedural, substantive and evidentiary law in conducting his defense"). See also *Connecticut Light & Power Co.* v. *Kluczinsky,* 171 Conn. 516, 519, 523-524 (1976) (although Connecticut courts are "consistently . . . solicitous of the rights of pro se litigants," the Supreme Court rejected rule that pro se litigants are "deprived of a fundamental constitutional right and a fair trial" because such a rule "would encourage litigants to bypass the legal profession at the trial level and, if dissatisfied with the results, give appellate counsel the opportunity, with the advantage of hindsight, to seek review of claimed errors which the trial court never had an opportunity to correct"); *State* v. *Hutchison,* 341 N.W.2d 33 (Iowa 1983) ("[d]efendant cannot proceed in a manner that will obstruct the trial and deprive the court of its inherent power to properly control and order the procedures"); *State* v. *Green,* 238 Neb. 475, 481 (1991) ("[d]efendant may not utilize his or her right to counsel to manipulate or obstruct the orderly procedure in the court or to interfere with the fair administration of justice").

legal errors, many of which might constitute ineffective assistance of counsel if committed by a member of the bar, were inherent in the risk he assumed. See, e.g., *Faretta, supra* at 834-835 n.46 (pro se defendants cannot raise ineffective assistance of counsel claims on appeal).

Contrary to the defendant's assertions, the prosecutor did not unfairly "take advantage" of the defendant's pro se status. Nor did the judge prejudicially conduct the trial by limiting the introduction of cumulative evidence and excluding improper questions. No lenience is required on the part of the judge or prosecutor toward a pro se defendant. There is no judicial obligation to protect a pro se defendant from his lack of legal training. *Faretta, supra* ("The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law"). See also note 3, *supra.* Neither the trial judge nor the prosecutor impaired the defendant's right to represent himself in a fair proceeding.[4]

B. *Courtroom decorum in pro se cases.* The defendant raises matters of courtroom decorum which we mention briefly. We note that pro se defendants should be addressed with titles connoting equal respect to that afforded opposing counsel. The defendant asserts that the judge referred to the defendant frequently as "you" rather than as "Mr. Jackson," and allowed witnesses to refer to the defendant either as "you" or "Sam."[5] There was no error. The defendant himself

---

[4] We note that the judge asked the court clerk to provide a copy of an order to assist the defendant with copying portions of the probable cause hearing that the defendant wanted to offer as exhibits and to assist the defendant in summonsing witnesses. He heard the defendant's motion to suppress identification even though it was filed late, and generally permitted the defendant to act as trial counsel and approach witnesses in order to show them prior testimony.

[5] We note that the trial judge warned the defendant that, by referring to himself alternately as "I," "the defendant," and "me" throughout the proceedings, the defendant was creating confusion. The judge suggested to the defendant that, "[r]ather than using the pronoun 'him,' why don't you use some other phrase like the 'defendant' or anything that makes it clear who you are talking about, or this 'assailant,' whatever."

asked questions in the same manner throughout the trial. There is no substantial risk of a miscarriage of justice.

The defendant asserts that he was prejudiced by the judge's repeated interruptions. As we read the interruptions,[6] the judge simply told the defendant how to ask questions which would show any inconsistencies with testimony at the probable cause hearing. While the trial judge has a duty, " 'as the directing and controlling mind at the trial,' to see that the trial [does] not get out of hand," in general "it is the better practice to warn and rebuke counsel out of the jury's hearing" (citations omitted). *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 226-227, cert. denied, 389 U.S. 916 (1967), quoting *Whitney* v. *Wellesley & Boston St. Ry.*, 197 Mass. 495, 502 (1908). However, we recognize that "[s]ome warnings and rebukes must unavoidably be made in the jury's presence." *McLaughlin, supra.* See *Commonwealth* v. *Leonard*, 352 Mass. 636, 641-642 (1967). The record reveals that the defendant's cross-examination was argumentative and repetitive. Questions were inartfully phrased. The judge correctly excluded or curtailed repetitive or argumentative cross-examination. He also correctly excluded improperly phrased questions. A pro se defendant cannot put the judge or prosecutor in a "heads, I win, tails, you lose," position. That is exactly what the defendant is attempting to do. The record does not disclose a substantial risk of a miscarriage of justice.

2. *Sufficiency of the evidence of dangerous weapon.* The defendant was convicted of armed robbery and armed assault in a dwelling under G. L. c. 265, §§ 17 and 18A (1992 ed.). Each statute states that the robbery or assault be committed

---

[6] The record reveals that the judge's interruptions were an attempt to assist the defendant by explaining to him how to show that a witness made a prior inconsistent statement at the probable cause hearing. The judge could have, but did not, simply exclude the questions and require the defendant to question the witnesses correctly or to forgo presenting that evidence before the jury.

by one armed with a dangerous weapon.[7] On January 22, 1991, the defendant and two other men entered the apartment of the victim. The victim said that he heard the other men moving videocassettes. He asked the defendant, "Wait a minute, what are they doing back there?" The victim then got up from the chair where the defendant had told him to sit. The defendant put his hand in his "pocket and motioned it" toward the victim and said, "I'll blow you away." The victim said that the defendant carried himself as if he was armed with a gun. The victim said that he was afraid he would be harmed. The victim did not see a gun.

The judge instructed the jury that "an appearance of a dangerous weapon when a defendant causes that appearance to exist, can be found to be a dangerous weapon." The defendant objected to the instruction and raised the issue in his motion for a required finding of not guilty. The defendant argues this issue is governed by our decision in *Commonwealth* v. *Howard*, 386 Mass. 607 (1982), while the Commonwealth maintains that *Commonwealth* v. *Delgado*, 367 Mass. 432 (1975), governs this appeal. A majority of the court agrees with the Commonwealth.

In *Howard, supra* at 607, we reversed the conviction of robbery while "armed with a dangerous weapon" where the evidence showed the defendant did not possess a gun even though when he approached the victim, "he had his right hand in his jacket, and he said, 'Walk straight, look down, and don't try anything foolish or I'll pull the trigger.'" The defendant was arrested during the robbery. Despite the defendant's words, the police did not find a gun when they ar-

---

[7]General Laws c. 265, § 17 (1992 ed.), provides in relevant part: "Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment in the state prison for life or for any term of years . . . ."

General Laws c. 265, § 18A (1992 ed.), provides in relevant part: "Whoever, being armed with a dangerous weapon, enters a dwelling house and while therein assaults another with intent to commit a felony shall be punished by imprisonment in the state prison for life, or for a term of not less than ten years. . . ."

rested and searched him. We reasoned that "where a robber had no instrumentality at all, although he said he had a gun, a conviction of armed robbery is not warranted." *Id.* at 608. We said that "[i]t is the absence of any basis to infer that the defendant may have had a gun that distinguishes this case from *Commonwealth* v. *Delgado.*" *Howard, supra* at 610. We concluded that statutes making it a crime to commit a robbery or an assault while armed "should not be read as including a robbery while *apparently* armed with a dangerous weapon when in fact the defendant was unarmed" (emphasis original). *Id.* at 608.

In *Delgado*, the defendant and three other men entered a store. One man held a knife to the store manager while his coventurers took property from the store. The defendant said, "Hold him or I'm going to shoot him." *Id.* at 434. At trial, "there was no direct evidence of a gun, no gun was seen by the store manager, and no gun was found on the defendant's person or in the area where the defendant was apprehended." *Id.* at 436. We affirmed the conviction of armed robbery by means of a gun and armed assault on the basis of the defendant's conduct and words, which suggested that he was armed with a gun. The defendant's conduct placed the victim "in reasonable apprehension that force may be used," *id.* at 437, and we concluded that the "jury could reasonably conclude that the defendant should be taken at his word." *Id.* at 437.

Unlike the defendant in *Howard*, Jackson was not apprehended in the course of the robbery. Thus, Jackson's conduct and words — with his hand in his jacket stating that "I'll blow you away" — were designed to place the victim in fear and did in fact do so. In these circumstances, there is no reason not to take an assailant at his word.

Because the defendant, like Delgado, had the opportunity to dispose of the gun before he was arrested, a distinguishing fact from *Howard*, it was proper to instruct the jurors that it was up to them to determine whether the defendant was

armed with a gun when he said "I'll blow you away" during the crimes.[8]

3. *Armed robbery indictment.* The defendant challenges the judge's denial of his motion to dismiss the armed robbery indictment on the ground that the indictment failed to state the required mens rea for armed robbery and thus failed to charge a crime. The indictment against the defendant charged that "being armed with a dangerous weapon, to wit: a gun, [the defendant] did assault [the victim] with intent to rob him, and thereby did rob and steal from the person of said [victim] a betamax recorder . . . ." The defendant argues the proper mens rea is the "intent to steal." See G. L. c. 277, § 39 (1992 ed.).

Under G. L. c. 277, § 79 (1992 ed.), which prescribes the proper form of indictments for various crimes, including "[a]ssault with dangerous weapon, with intent to rob," the intent is "with intent to rob." The indictment against the defendant for armed robbery tracks the language provided in G. L. c. 277, § 79. "We have consistently held that indictments that follow the statutory form are constitutionally sufficient." *Commonwealth* v. *Hrycenko,* 417 Mass. 309, 313 (1994). There was no error in denying the defendant's motion to dismiss the armed robbery indictment.

4. *Right to cross-examine witnesses.* The defendant also argues that his right to cross-examine witnesses against him was infringed by the judge's interjection of comments and instructions to the defendant.[9] *Davis* v. *Alaska,* 415 U.S.

---

[8]The judge correctly instructed the jurors on the lesser included offenses of unarmed robbery. The judge did not give a lesser included instruction on simple assault in a dwelling house. The fact that the defendant was pursuing an all or nothing trial strategy is irrelevant. The "test to determine if an instruction on a lesser included offense is required does not depend on whether there is an objection by the defendant or the Commonwealth but rather whether the evidence supports the giving of such instruction." *Commonwealth* v. *Thayer,* 418 Mass. 130, 133 (1994), quoting *Commonwealth* v. *Vasquez,* 27 Mass. App. Ct. 655, 660 (1989).

[9]The following exchange is cited by the defendant as an example of the judge's alleged impermissible restriction on his right to cross-examine witnesses:

308, 316 (1974) (criminal defendants guaranteed Sixth Amendment right to reasonable cross-examination of witnesses against them). We review the issue to determine whether there was a substantial risk of a miscarriage of justice.

"[C]ross-examination of witnesses, in particular the principal accuser of the defendant, is a fundamental component of the right of self-representation." *Commonwealth* v. *Conefrey*, 410 Mass. 1, 12 (1991). It is well settled that "the scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested, rests largely in the sound discretion of the judge, not subject to revision unless prejudice is shown to a party by reason of too narrow restriction or too great breadth of inquiry." *Commonwealth* v. *Repoza*, 382 Mass. 119, 125 (1980), *S.C.*, 400 Mass. 516, cert. denied, 484 U.S. 935 (1987), quoting *Commonwealth* v. *Smith*, 329 Mass. 477, 479 (1952). The bur-

---

THE DEFENDANT: "Is it possible . . . that you are mistaken in making this identification or as putting the finger on me as having been your assailant and robber, mistaken?"

THE WITNESS: "No, I'm certainly not mistaken there."

THE DEFENDANT: "Well, you somehow, according to your own testimony, did not observe the mustache I had on the 22nd and 23rd and today?"

THE JUDGE: "Well, that is repetitious and argumentative. That is something you can argue to the jury."

" . . .

THE DEFENDANT: "[W]ould you say your memory was better then since it was shortly after the crime than it is today?"

THE WITNESS: "Not necessarily."

" . . .

THE DEFENDANT: "Is it possible that sometimes . . . "

THE JUDGE: "Well, we are not going to talk about possibility."

THE DEFENDANT: "That is exactly what his response was a possibility, Your Honor."

THE JUDGE: "Well, it was nevertheless responsive to the question. But we are not going to have questions that call for possibilities."

THE DEFENDANT: "Let me ask you this . . . . Is it not possible that you are mistaken in your identification of me?"

THE JUDGE: "No. Not just possible. Anything in this world is possible. You can ask him about his degree of confidence in his opinion, that kind of thing, but not on the realm of possibilities. Ask him if he has any doubt about it, anything of that sort. I think that is what you are talking about."

den of demonstrating abuse of discretion rests with the defendant. We consider the entire cross-examination in evaluating the defendant's claim. *Reposa, supra,* and cases cited.

As the exchange set forth in the margin shows,[10] see note 9, *supra,* the defendant's strategy in cross-examining the victim was to develop inconsistencies and highlight omissions in the victim's initial description and identification of the defendant. The judge allowed exploration of the witness's conviction in the accuracy of his recollection of the defendant. However, when the defendant continued at length to press the witness as to the "possibility" that he was mistaken in identifying the defendant, the judge excluded that question on cross-examination. "A judge certainly has wide discretion to limit repetitive or redundant cross-examination, and there was no showing that the judge's action on these matters unfairly impaired the defendant's right of cross-examination" (citations omitted). *Commonwealth* v. *Watson,* 377 Mass. 814, 837 (1979), *S.C.,* 409 Mass. 110 (1991).

5. *Identification.* The victim saw the defendant two times on January 22, 1991, once as a visitor to his apartment with an acquaintance of the victim, and later the same evening as one of three men who called on him at his home and committed these crimes. When the three men left the apartment, the victim telephoned the police to report the crimes. The defendant challenges the photographic identification made by the victim. The police showed the victim a photographic array of eight men. The victim "immediately" identified the defendant's photograph. After the victim selected the defendant's photograph, the police assured the victim that he had identified his assailant, told the victim that they had the suspect in custody on an unrelated crime, and told the victim

---

[10]Prior to the exchange with the judge, the question whether it was possible the witness was mistaken had been asked and answered. The defendant asked without objection, "Is it possible . . . that you are mistaken in making this identification or as putting the finger on me as having been your assailant and robber, mistaken?" The witness replied, "No. I'm certainly not mistaken there."

that the man he selected had committed a murder in the past.[11] The defendant filed a late motion[12] to suppress the photographic identification and the in-court identification, arguing that the police officer's conduct was impermissibly suggestive and that a lineup rather than a photographic array was the proper identification procedure. The judge denied the motion after a voir dire hearing. The judge found that the victim was a very perceptive, "very acute observer, and his testimony [had] a high degree of reliability." He found the "identifications of the defendant in this courtroom and his photographic identification [to be] based upon his clear recollections that came as a result of his observations of the defendant at the time of the incident . . . [and that] the initial meeting [at the victim's] apartment with Rich [an acquaintance of the victim] was for fifteen to twenty minutes." The judge determined "there was nothing suggestive at all about the circumstances under which the defendant was first seen." He also ruled that "there was nothing suggestive about [the photographic identification] until after the identification was made. It is unfortunate the officer did say what he did say concerning the defendant then being in custody, but that certainly didn't [a]ffect the photographic identification, but it did certainly tend to confirm in the witness'[s] mind that his choice had been a correct one."

In order to suppress a photographic identification, the defendant must establish by a preponderance of the evidence that his due process rights were violated by an identification process "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Commonwealth* v. *Thornley*, 406 Mass. 96, 98 (1989) (*Thornley II*), quoting *Commonwealth* v. *Thornley*, 400 Mass. 355,

---

[11]The defendant himself brought out before the jury that he had killed someone in the past. See *Commonwealth* v. *Jackson*, 377 Mass. 319 (1979).

[12]The motion was filed just prior to trial. The judge permitted the defendant to raise the issue late and heard voir dire testimony prior to permitting the jurors to hear identification testimony.

364 (1987) (*Thornley I*). *Commonwealth* v. *Holland*, 410 Mass. 248, 253 (1991).

The defendant points only to police conduct which occurred *after* the victim had selected the defendant's photograph out of a photographic array in arguing that the process was unnecessarily suggestive. The totality of the circumstances does not indicate that the police, prior to or while presenting the photographs, focused the victim's attention on the photograph of the defendant or otherwise made suggestions that could result in an irreparable misidentification.[13]

---

[13]Although the defendant was in custody for an unrelated offense at the time of the photographic identification, he was not notified of the photographic identification and no lineup was conducted. The defendant thus urges this court to adopt a rule that, unless a lineup is not possible, "identification by photograph should not be used where the accused is in custody." *People* v. *Anderson*, 389 Mich. 155, 186-187 (1973). See *People* v. *Jackson*, 391 Mich. 323, 339 (1974) (adopting rule of evidence that *United States* v. *Wade*, 388 U.S. 218 [1967], as to corporeal identifications, and *People* v. *Anderson*, *supra*, as to photographic showings, "shall govern the receipt in evidence of identification testimony where the witness has viewed or seen photographs of the suspect without regard to when the judicial phase of the prosecution is commenced" [footnotes omitted]). The *Anderson* case is inapplicable to these facts because Anderson was in custody for the crime in which he claims the lineup should have been held. Jackson was in custody for an unrelated crime. Thus, there was no violation of a "right" to a lineup even under *Anderson*. Although lineups are, as a general rule, the better identification procedure, see *Commonwealth* v. *Storey*, 378 Mass. 312, 319 (1979), photographic identifications which are not impermissibly suggestive are not constitutionally infirm. After viewing the array of eight photographs, we conclude the photographic array was not "so impermissibly suggestive as to give rise to a substantial likelihood of an irreparable misidentification." See *Commonwealth* v. *Melvin*, 399 Mass. 201, 205 (1987).

The defendant also argues that, by selecting a photographic array instead of a lineup identification procedure when the defendant is readily available for a lineup the police subvert his Sixth Amendment right to counsel. *Commonwealth* v. *Cooper*, 356 Mass. 74, 83 (1969). This argument is without merit. See *United States* v. *Ash*, 413 U.S. 300 (1973) (no right to counsel at postindictment photographic array because photographic array is not a critical stage of the prosecution), and *Commonwealth* v. *Johnson*, 371 Mass. 862, 868 (1977) ("Sixth Amendment right to counsel does not extend to the showing of standard police identification photographs"). In *Commonwealth* v. *Lopes*, 362 Mass. 448, 451 (1972), we said that "[t]o the extent that our decision[ ] in *Commonwealth* v. *Cooper*, 356 Mass. 74, 83 (1969), assume[s] that a right to counsel in

Cf. *Thornley II, supra* (where eyeglasses were determinative identifying feature of defendant and only defendant's photograph had eyeglasses, photographic array was impermissibly suggestive). The judge did not improperly deny the defendant's motion to suppress the photographic identification. *Commonwealth* v. *Warren*, 403 Mass. 137, 139 (1988) ("When the procedures are not suggestive, the pretrial identifications are admissible without a further showing").

The defendant further challenges the judge's denial of his motion to suppress the victim's in-court identification. Under the standard set forth in *Commonwealth* v. *Botelho*, 369 Mass. 860, 866 (1976), the in-court testimony may be suppressed if (1) the defendant has shown by a preponderance of the evidence that the photographic identification was unnecessarily suggestive, and (2) the Commonwealth is unable to show by clear and convincing evidence that the witness's in-court identification was not derived from a source independent of the unnecessarily suggestive photographic identification. The photographic identification was not impermissibly suggestive. There was no error.[14]

6. *Consciousness of guilt evidence.* As part of its case-in-chief, the prosecution presented evidence that, when the defendant was approached by a police officer on January 23, 1991, the day after the assault and robbery of the victim, he told the officer his name was "James Johnson." The defendant objected to the introduction of this consciousness of guilt evidence on the ground that the police officer was investigating a crime unrelated to the assault and robbery at the time the defendant misrepresented his identity. The defendant argues that it was error to admit this evidence because it is likely that he gave a false name because of the unrelated

---

connection with an identification procedure arises at an earlier stage [before defendant is indicted or charged with the crime], we no longer follow" it.

[14]Because the victim had been to the District Court for the probable cause hearing at that time and a hearing was held on an unrelated matter and this case continued to another date, the judge did suppress the evidence of the identification made at the probable cause hearing.

crime, which occurred on the same day that he spoke to the police. There was no error. "False statements made to the police are a standard example of admissible evidence on consciousness of guilt." *Commonwealth* v. *Carrion*, 407 Mass. 263, 276 (1990), and cases cited. The defendant argues that he might have misrepresented his name to the police not because of the robbery and assault on the victim which occurred on January 22, 1991, but rather because of a crime he was subsequently charged with which occurred on January 23, 1991, the day of the investigation.

"Evidence that tends to show consciousness of guilt is relevant and is not rendered inadmissible simply because it may indicate that the defendant has committed another offense." *Commonwealth* v. *Booker*, 386 Mass. 466, 471 (1982) (citations omitted). Because the evidence had a tendency to show that the defendant's misrepresentation was motivated by the assaults and robbery, the defendant's argument goes to the weight, not the admissibility, of the consciousness of guilt evidence.

7. *Jury instructions.* The defendant raises three issues regarding the jury instructions. The defendant first challenges the judge's instructions to the jury on the defendant's exercise of his right not to testify and on identification and further argues that the judge failed to instruct the jury on consciousness of guilt evidence. Because the defendant did not preserve these issues below, "we review the jury instructions for clear error creating a substantial risk of a miscarriage of justice." *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 610 (1987).

A. *Right not to testify.* The judge instructed the jury that the defendant's choice not to testify was not relevant to his guilt or innocence.[15] The defendant argues that the judge

---

[15]Specifically, the judge instructed: "Now, there are certain other basic considerations in every case, and one of them in this case is this defendant obviously as you have seen has chosen not to testify. Well, whether he testifies or not, again is his right. He can testify or not as he chooses. When he does not testify, he is simply exercising his right, and you are not to infer anything harmful to him in any way because of that fact."

committed prejudicial error by failing to ask the defendant whether he desired such a charge.

The defendant relies on *Commonwealth* v. *Buiel*, 391 Mass. 744, 745 (1984), in which we held that, "when a defendant seasonably requests that the jury not be instructed concerning the defendant's right not to testify, the judge must accede to that request." *Buiel* does not support the proposition that a trial judge commits reversible error by instructing the jury on the defendant's right not to testify when a defendant makes no request that the judge not give such an instruction. We noted in *Buiel, supra*, that, even if the defendant "had the right under the State Constitution to have no instruction given concerning his failure to testify, the giving of that instruction, over the defendant's objection, was harmless error." There was no substantial risk of a miscarriage of justice.

B. *Identification.* The judge instructed the jury that, "[y]ou may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant as a factor bearing upon the reliability of the identification." The defendant challenges the judge's instruction on identification on the ground that it was prejudicial. The Commonwealth argues that, even though the instruction did not mirror that adopted by this court in *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640 (1993),[16] the variance does not constitute reversible error. We agree. Although the instructions varied from those recommended in *Cuffie, supra* at 640-641, the identification instructions as a whole made clear to the jury that the identification of the defendant as the assailant was subject to error

---

[16]The portion of the instruction adopted in *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640 (1993), which the judge did not follow precisely reads, "You may also consider the length of time that lapsed between the occurrence of the crime and the opportunity of the witness, some time after the occurrence of the crime, to see and identify the defendant as the offender, as a factor bearing on the reliability of the identification." For the entire instruction, see *id.* at 640-641.

and suggestion.[17] Contrary to the defendant's claim, the instructions on identification were not prejudicial and did not create a substantial risk of a miscarriage of justice.

C. *Consciousness of guilt instruction.* The defendant did not request and the trial judge did not give an instruction on the consciousness of guilt evidence. The defendant claims that the failure to give the instruction requires reversal. Recently, we reconsidered our holding in *Commonwealth v. Cruz,* 416 Mass. 27, 29-30 (1993), and concluded that "the better practice is not to require that a judge, on his or her own initiative, instruct on the subject. The matter is left to the sound discretion of the judge, and it will not be error if he or she chooses not to instruct on the subject in the absence of a request." *Commonwealth v. Simmons, ante* 426, 436

---

[17]The judge instructed the jury as follows regarding identification: "In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight, and they go on and talk about the times when other senses are used. Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification and the circumstances under which the identification was made. If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant as a factor bearing upon the reliability of the identification. By the way, here when we are talking about identifications, that applies as well to photographs as it does to person-to-person type observations. You may also take into account that an identification made by picking the defendant out of a group of similar individuals, is generally more reliable than one that results in the presentation of the defendant alone to the witness. You may take into account any occasions in which the witness failed to make an identification of a defendant, or made an identification that was inconsistent with his identification at trial. Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony. Consider also the alternative of a mistaken identification having been made in good faith."

(1995).[18] We conclude that there was no substantial risk of a miscarriage of justice.

*Judgments affirmed.*


O'CONNOR, J. (dissenting). I would reverse the convictions of armed robbery and armed assault in a dwelling house with intent to commit a felony. The evidence did not warrant those convictions. I would remand this case to the Superior Court for the entry of verdicts of guilty of unarmed robbery and assault in a dwelling house with intent to commit a felony and for the imposition of sentences for those offenses.

The court correctly says, *ante* at 723, that there was evidence that, when the victim "got up from the chair where the defendant had told him to sit . . . [t]he defendant put his hand in his 'pocket and motioned it' toward the victim and said, 'I'll blow you away.' The victim said that the defendant carried himself as if he was armed with a gun. The victim said he was afraid he would be harmed. The victim did not see a gun." There was no other evidence bearing on the question whether the defendant was armed when, as the indictments allege, he assaulted and robbed the victim.

In holding that the evidence was sufficient to warrant the jury's guilty verdicts, the court concludes that *Commonwealth* v. *Delgado*, 367 Mass. 432 (1975), and not *Commonwealth* v. *Howard*, 386 Mass. 607 (1982), governs. *Ante* at 723. In both of those cases, by words and body language, the defendant told the victim that he had a gun and was prepared to use it. *Delgado, supra* at 434. *Howard, supra* at 607. In neither case was a gun seen or thereafter found. *Delgado, supra* at 436. *Howard, supra* at 609. In neither case was there evidence, other than the aforementioned communication, that the defendant was armed. Yet, in *Delgado*, decided in 1975, the court held that the evidence warranted a

---

[18]We note that *Commonwealth* v. *Cruz*, 416 Mass. 27, 29-30 (1993), was decided after the instructions in this case and thus there is no question that *Cruz* should apply to these instructions.

finding that the defendant was guilty of robbery "with a dangerous weapon, to wit: a gun," *id.* at 437, and, in *Howard*, decided in 1982, the court held that the evidence did not warrant such a conclusion. *Id.* at 611. The court in *Howard* concluded that "where a robber had no instrumentality at all, although he said he had a gun, a conviction of armed robbery is not warranted." *Id.* at 608.

As the court points out here, *ante* at 724, in *Howard* "[the court] said that '[i]t is the absence of any basis to infer that the defendant may have had a gun that distinguishes [*Howard*] from *Commonwealth* v. *Delgado*.'" The fair implication of that explanation is that, if there had been an evidentiary basis for the jury in *Howard* to find that the defendant "may have" had a gun, the evidence would have warranted the jury in finding beyond a reasonable doubt that the defendant actually had a gun when he robbed the victim.

The court's rationale in *Howard* for distinguishing *Delgado* was that, in *Delgado*, the evidence showed that the defendant had an opportunity before he was apprehended to discard a gun (*if* he had one), which would have warranted the jury in finding that he "may have" had a gun, whereas, in *Howard*, the defendant did not have such an opportunity, so the jury would not have been warranted in finding that the defendant "may have" had a gun. *Howard*, *supra* at 610. As a result, the court reversed the conviction in *Howard* while implying, at least, that *Delgado* was still good law.

The court now repeats the distinction it made in *Howard*, saying:

> "Unlike the defendant in *Howard* [and like the defendant in *Delgado*], Jackson was not apprehended in the course of the robbery. Thus, Jackson's conduct and words with his hand in his jacket stating that 'I'll blow you away' were designed to place the victim in fear and did in fact do so. In these circumstances, there is no reason not to take an assailant at his word.
>
> "Because the defendant, like Delgado, had the opportunity to dispose of the gun before he was arrested, a

distinguishing fact from *Howard*, it was proper to instruct the jurors [and, by implication, to submit the armed robbery and armed assault indictments to the jury] that it was up to them to determine whether the defendant was armed with a gun when he said, 'I'll blow you away' during the crimes." *Ante* at 723.

I wrote a concurring opinion in *Howard*. *Id.* at 611-618 (O'Connor, J., concurring). I agreed that the evidence in that case did not warrant a finding that the defendant was armed at the time of the alleged robbery, *id.* at 611, but I argued that the same result should have obtained in *Delgado* and that the *Howard* court should have expressly overruled *Delgado. Id.* at 618. I wrote in part that "[i]n light of common experience [see *Commonwealth* v. *Latimore*, 378 Mass. 671, 678 (1979)], a defendant's statement during a robbery that he has a gun, threatening as such a statement is, does not warrant an inference beyond a reasonable doubt that in fact he has one. Common experience suggests that a robber who does not have a weapon may say he has one in order to facilitate the robbery. This is unlike a defendant's statement, after the crime has been completed, that at the time of the crime he had a weapon. See *Commonwealth* v. *Fiore*, 364 Mass. 819, 822 (1974); *Commonwealth* v. *Kimball*, 321 Mass. 290 (1947). Common experience tells us that ordinarily such an admission is not made unless it is true." *Id.* at 612-613. In my concurrence in *Howard*, I also stated: "Even if the defendant has moved from the crime scene before being apprehended by the police, so that if he had a gun he could have disposed of it, a jury would not be warranted in finding that he had a gun. This is because evidence of such a circumstance is irrelevant; it lacks probative worth." *Id.* at 613. Evidence that a defendant *may have* disposed of a gun has no tendency whatsoever to show that he *did* dispose of a gun, and therefore it sheds no light on the critical question whether he ever had a gun. Evidence of the defendant's words and body language at the time of the alleged crimes is insufficient, standing alone, to warrant a finding beyond a

reasonable doubt that the defendant was armed. It is illogical and grossly unfair to a defendant to say that evidence that is inadequate to warrant a finding beyond a reasonable doubt that he was armed at the time of a robbery or assault is somehow elevated to that lofty plateau by additional evidence that he had time to dispose of a weapon if he had one that he *may have* (*Howard, supra* at 610) or may *not* have had a gun and disposed of it. For all that appears in this case, the "robber had no instrumentality at all, although he said he had a gun," *id*. at 608, and therefore the "conviction[s] of armed robbery [and armed assault are] not warranted." *Id.*