# United States Court of Appeals
## For the First Circuit

No. 03-1203

GEORGE CORREIA,

Petitioner, Appellant,

v.

TIMOTHY HALL AND THOMAS REILLY,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Lynch, Circuit Judge.

Leslie W. O'Brien for appellant.
Dean A. Mazzone, Assistant Attorney General, with whom Thomas
F. Reilly, Attorney General, was on brief for appellees.

April 16, 2004

**CYR, <u>Senior Circuit Judge</u>.**  George Correia appeals the district court order which denied his petition for a writ of habeas corpus, <u>see</u> 28 U.S.C. § 2254, in which he contended that a state trial court judge violated due process by vindictively punishing him for exercising his right to a jury trial on various criminal charges.  We affirm.

**I**

<u>BACKGROUND</u>

On September 8, 1995, petitioner asked a Boston-area car dealership salesman for permission to test-drive a 1989 Corvette. During the ensuing drive, Correia absconded with the vehicle.  Four days later, a Boston police officer saw Correia as he was driving the Corvette in the Beacon Hill area.  Unaware that the Corvette was stolen, the officer pulled it over after noting that it had neither a valid license plate nor a current inspection sticker.  As the officer approached the Corvette on foot, Correia abruptly sped away from the scene, leading State and Boston police [hereinafter: "police"] on a prolonged high-speed car chase on downtown Boston streets and adjacent freeways.  During the chase, Correia recklessly drove the wrong way down one-way streets, crashed into several other police and civilian vehicles, repeatedly refused police demands to surrender at gunpoint, attempted to run over several on-foot police officers, and finally managed to strike a police officer with the vehicle. This vehicular rampage caused

severe bruises and lacerations to a police officer, as well as spinal injuries to a civilian automobile driver.

In due course, Correia was indicted in Suffolk County Superior Court on forty-eight counts: speeding (4 counts), driving to endanger (4), driving with a suspended license (1), assault and battery with a vehicle (6), assault with a vehicle (6), receiving stolen goods (2), leaving the scene after causing personal injury or vehicular damages (17), driving the wrong way on a one-way street (2), and failing to stop for a police officer (6).

Prior to the jury trial, Correia informed the presiding superior court judge that he might agree to plead guilty. Whereupon the judge informed Correia that he probably would impose a 5-to-7 year prison sentence should Correia enter a guilty plea. However, shortly thereafter Correia elected to proceed to trial. Finally, disregarding the court's advice, Correia elected to represent himself at trial.

Following trial, the jury convicted Correia on twenty-one of the forty-eight counts:  assault and battery with the Corvette (1 count); assault with the Corvette (1); receiving stolen goods (2); leaving the scene after causing personal injury or vehicle damage (11); and failing to stop for a police officer (6).[1]  The

_____

[1]The trial court allowed the government's pretrial motion to dismiss 20 of the 48 counts, and the jury eventually acquitted Correia on 5 of the 6 counts charging assault and battery with a vehicle, and 2 of the 6 counts charging assault with a vehicle.

trial judge denied Correia's ensuing motions for a new trial, and sentenced him to imprisonment for 12 to 17 years, well within the sentencing range prescribed by statute.

The Massachusetts Appeals Court affirmed the convictions and sentences in an unpublished opinion, and the Supreme Judicial Court denied the ensuing application for further appellate review. In February 2002, Correia submitted the instant habeas corpus petition to the United States District Court for the District of Massachusetts, which denied the requested relief and issued its certificate of appealability. Correia now appeals from the district court order denying the petition for habeas corpus.

## II

### DISCUSSION

Correia contends that the Massachusetts Appeals Court unreasonably applied clearly established United States Supreme Court precedent in rejecting his claim that the trial court vindictively punished him for refusing to enter a guilty plea prior to trial by imposing a 12-to-17 year prison term, rather than the 5-to-7 year term which would have been imposed had Correia entered a guilty plea. As evidence of the alleged vindictiveness, Correia relies upon (i) the large numerical differential between the pretrial and post-trial sentencing ranges; (ii) the jury acquittals on many of the more serious charges in the indictment; and (iii) the comments made by the trial judge during trial, suggesting that

-4-

the trial judge himself believed that Correia was guilty and that the trial was a waste of judicial resources.

We review denials of habeas corpus relief de novo, inquiring whether the state-court decision is "contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." 28 U.S.C. § 2254; see Williams v. Taylor, 529 U.S. 362, 404-05 (2000). A state-court decision contravenes the "unreasonable application" criterion when, though it correctly identifies the pertinent United States Supreme Court rule, its application to the particular facts of the case at bar is objectively unreasonable. Id. at 409-10.

In affirming the conviction notwithstanding Correia's "vindictive sentencing" claim, the Massachusetts Appeals Court relied upon three grounds : (1) the trial court cited objective, non-vindictive reasons for imposing a higher sentence following trial; (2) the trial court neither stated nor implied that Correia would receive a higher sentence if he did not plead guilty; and (3) at no time did the trial court evince a belief that the trial was a waste of judicial resources.

In the event a criminal defendant successfully appeals his conviction and the same trial judge imposes a stiffer sentence following a retrial, the presumption arises that the harsher sentence was a product of judicial vindictiveness in response to the defendant's rightful recourse to the appellate process; yet

this presumption is rebuttable provided the record contains objective evidence which adequately explains the more severe sentence.  See United States v. Goodwin, 457 U.S. 368, 373-74 (1982); North Carolina v. Pearce, 395 U.S. 711, 726 (1969); United States v. Mena-Robles, 4 F.3d 1026, 1037 (1st Cir. 1993).

The same presumption may arise when a criminal defendant rejects a plea agreement – and with it the prospect of a more lenient sentence – and elects instead to exercise his constitutional right to a jury trial.  See, e.g., Johnson v. Vose, 927 F.2d 10, 11 (1st Cir. 1991).  The two situations differ, of course, in that a higher sentence after a remand and retrial alters a judge's previously imposed punishment, whereas a higher sentence after a failed plea bargain is not a retreat from a previously imposed sentence, and as here, is likely to reflect additional evidence adduced at trial and the loss of a discount for pleading guilty.

In any event, as this presumption is designed to safeguard against the risk of actual vindictiveness – as distinguished from the mere fact that the sentencing court decided to impose a harsher sentence following a trial or retrial – the presumption "arises only in circumstances 'in which there is a "reasonable likelihood" that the increase in sentence is the product of actual vindictiveness.'"  Id. (citing Alabama v. Smith, 490 U.S. 794, 799 (1989))  (citations omitted; emphasis added).

Absent such a "reasonable likelihood," the aforementioned presumption is never triggered, and the defendant must instead establish <u>actual</u> vindictiveness. <u>See</u> <u>id.</u>

The record in the instant case simply cannot support a determination that the Massachusetts Appeals Court unreasonably applied the pertinent legal principles. <u>See</u> <u>Williams</u>, 529 U.S. at 405. First, the mere fact that the post-verdict sentence exceeded the "plea bargain" sentence by some seven to ten years is insufficient, in and of itself, to indicate a reasonable likelihood of actual vindictiveness. For one thing, unlike a verdict of guilty, an admission of guilt properly warrants the sentencing court's consideration of a more lenient sentence than might otherwise be imposed in appropriate response to the defendant's criminal conduct. <u>See</u> <u>Smith</u>, 490 U.S. at 802. Thus, the five-to-seven year prison sentence proffered to Correia during the plea bargaining process does not reflect a true assessment of Correia's criminal culpability, in that it plainly included a substantial discount for leniency.

As for the remaining aspect of the differential, normally the sentencing court imposes a post-verdict sentence after considering the evidence presented at trial. In contrast, a plea-bargained sentence normally is predicated upon a more rudimentary record of the alleged criminal conduct, such as the description in the indictment, and/or a presentence report. <u>See</u> <u>id.</u> at 801.

Indeed, the sentencing judge in this case adverted to this very consideration in sentencing Correia, explicitly observing that both the government's graphic trial presentation regarding the sheer recklessness of the Correia rampage, and Correia's apparent lack of remorse, see id. ("[T]he defendant's conduct during trial may give the judge insights into [the defendant's] moral character and suitability for rehabilitation."), accounted in substantial part for the decision to impose the harsher sentence.[2]

---

[2]At the sentencing hearing, the judge stated:

> For the record, I wish to make a statement because the sentence imposed here is substantially greater than the sentence discussed at the outset of this trial when there was the prospect of a guilty plea. Since that time, I've come to know the details of the crimes involved here and the character of the defendant a lot better than I knew when I would have been content with a much lower sentence. In my wildest imagination I could find it difficult to find a worse possible scenario for the aftermath or the consequences of a stolen motor vehicle. As I reviewed my notes, I counted over twenty vehicles that were damaged, smashed into some way by the operation of that vehicle that morning. It has got to be miraculous that no one was killed as a result of this. There was, however, one man seriously injured and he is still suffering the consequences of the conduct of the defendant that day. The conduct of the defendant on the date in question evidenced an absolutely total disregard for the lives of anyone and the property of everyone. In the conduct of his acts that day he viciously attacked any police officers trying to stop him. He was obviously going to stop at nothing, or for nothing, I should say, and ultimately forced the police to use gunfire to stop him on the corner of Washington and Marginal. During the conduct of the trial, he has demonstrated absolutely no remorse for what has gone on that day. On the contrary, he has converted himself from a perpetrator of serious crimes to a victim of police brutality because of the fact that he forced them to use gunfire to stop him on

Compared with the sparse information available to the trial judge at the pretrial conference,[3] consisting of little more than a recitation of the charges set forth in the indictment, see supra Section I, the trial record abundantly demonstrates not only the gravity of the alleged criminal conduct, but the increased risk of serious bodily harm to which Correia exposed not only the law enforcement officers involved, but any hapless civilian who happened to be in his way. Cf. Pearce, 395 U.S. at 723 ("A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'") (citation

_____

that occasion. I see no prospect of rehabilitation for this defendant and consequently have sentenced him as I have.

[3]Correia points solely to the trial judge's pretrial observation that Correia "practically wiped out half of the Boston Police Department and the state troopers, according to the charges." (Emphasis added.) Although the quoted observation plainly reflects a measure of hyperbole, it was neither made in the presence of the jury nor purported to be a premature assessment of Correia's level of culpability, as distinguished from a recounting of the known and undisputed consequences of Correia's conduct as set forth in the indictment. See, e.g., Taylor v. Kincheloe, 920 F.2d 599, 608 (9th Cir. 1990) (finding trial judge's description of charged offenses, as "execution style slayings," not evidence of vindictiveness, "since it is obvious that a judge may consider the circumstances of the offense in making a sentencing decision, [and] [Alabama v. Smith, 490 U.S. 798 (1989)] is founded on the notion that this is exactly what we expect judges to do.").

omitted). For instance, when a police officer initially approached the vehicle Correia was driving – blatantly stolen some four days earlier in the immediate presence of a car salesman – Correia simply sped off onto busy downtown Boston streets, even driving the wrong way down a one-way street. When heavy traffic blocked Correia's escape, just as another police officer approached Correia's stationary vehicle on foot, Correia attempted to back the car over the officer. Whereupon the officer's partner fired shots as Correia sped away, at times driving directly onto sidewalks occupied by pedestrians. Shortly thereafter, Correia drove the vehicle directly at and struck another police officer attempting to stop him at an intersection,[4] then collided with several other

_____

[4]Correia further contends that the jury acquittals on seven of the nine counts of assault and/or battery with a vehicle render the trial judge's post-verdict sentence vindictive. He maintains that since the jury acquitted him of several charges that he assaulted police officers, the trial court improperly considered that "[i[n the conduct of his acts that day he viciously attacked any police officers trying to stop him." Correia devotes one conclusory paragraph to this contention, and cites no supporting authority. See United States v. Sanchez, 354 F.3d 70, 80 n.4 (1st Cir. 2004) (noting that appellate argument raised in perfunctory manner is waived). Although Massachusetts law arguably limits the sentencing court's authority to consider "acquitted conduct" in imposing sentence, see Commonwealth v. Goodwin, 605 N.E.2d 827, 830 (Mass. 1993); cf. United States v. Reyes-Echeverria, 345 F.3d 1, 7 (1st Cir. 2003) (noting that court may sentence for acquitted conduct if government proves it by preponderance of evidence), Correia was convicted on two counts of assault and/or battery with the vehicle, three counts of leaving the scene after causing personal injury, and six counts of failure to stop for a police officer. Thus, it was in no sense improper for the sentencing judge to point out that Correia had "attacked" police officers. See Goodwin, 605 N.E.2d at 831 ("In making th[e] [sentencing] assessment, the judge may consider many factors which would not be relevant at trial

parked cars while attempting to extract himself from this same encounter.

When yet another officer stopped him on Storrow Drive, and approached Correia's car with revolver drawn, Correia suddenly reversed his vehicle into a Volvo, causing spinal injuries to its driver. Ignoring the police officer's orders to stop, Correia promptly sped off over the center island separating Storrow Drive. In so doing, he collided head-on with several vehicles in his path, and attempted to run over two other policemen patrolling on foot, who were forced to respond by firing their revolvers at the vehicle which Correia was driving. While returning to downtown Boston, Correia attempted to evade two police cruisers which were in pursuit, drove into three cruisers positioned to road-block his vehicle, then backed into a private vehicle, injuring its driver. The police officers who converged upon the scene fired their weapons at the Correia vehicle, wounding him. Undiscouraged, Correia then proceeded to resist arrest. The police officers were required to extract Correia forcibly from the vehicle in order to effect the arrest.

At trial, Correia tendered the defense that (i) he initially fled not because he was driving a stolen vehicle, but because he was operating without a license, and (ii) he continued

including hearsay information about the defendant's character, behavior, and background.").

-11-

his flight in self defense, when the police mistook him for another armed fugitive and fired shots at him. However, the record reflects that this "other fugitive" was black; whereas Correia is white.

In light of the demonstrated discrepancies between the pretrial and post-verdict records, the Massachusetts Appeals Court conclusion – that the harsher sentence imposed by the trial judge was based upon factors other than vindictiveness – did not remotely constitute an unreasonable application of United States Supreme Court precedent. "[I]f it is reasonably clear that the judge reshaped the impost merely as a means of bringing original sentencing intentions to fruition after some new development had intervened, a need for employing the Pearce presumption never arises." United States v. Pimienta-Redondo, 874 F.2d 9, 13 (1st Cir. 1989).[5]

_____

[5]For these same reasons, Correia's reliance upon decisions such as In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire, 56 F.3d 295 (1st Cir. 1995), is unavailing, given that such decisions involved situations in which the sentencing judges offered no rationale for imposing the harsher sentences. See id. at 311 ("Though we have great confidence in [the district judge], his silence on this subject leaves the award open to a perception that appellants have been penalized for successfully prosecuting their previous appeals.") (emphasis added); United States v. Mazzaferro, 865 F.2d 450, 458 (1st Cir. 1989) ("In the face of such silence, we cannot rule out the possibility that the sentence was imposed in retaliation for [defendant's] insistence to stand trial.") (emphasis added). Also, Mazzaferro involved a direct appeal from the conviction, as distinguished from a collateral habeas corpus petition. Finally, in a habeas corpus proceeding, factually similar decisions of the lower federal courts may "inform" the habeas inquiry in some instances, but only Supreme

Furthermore, as Correia must concede, the sentencing judge made no comment whatsoever which might even remotely imply that he intended to impose a harsher post-verdict sentence in the event the defendant did not accept a plea bargain. Cf., e.g., United States v. Crocker, 788 F.2d 802, 808 (1st Cir. 1986) (finding that presumption arose because sentencing court stated: "I think imposing upon the time and resources of the Court to try a case which should not be tried is an imposition which deserves consideration when it comes time for me to sentence and I will do so."); Longval v. Meachum, 693 F.2d 236, 237 (1st Cir. 1982) (same, where judge stated: "I strongly suggest that you ask your client to consider a plea, because, if the jury returns a verdict of guilty, I might be disposed to impose a substantial sentence."). As the instant record contains no explicit or implicit threat of any such impermissible linkage, no presumption of vindictiveness was triggered, see Johnson, 927 F.2d at 12 (noting that such linkage is "crucial in establishing a reasonable likelihood of vindictiveness"); see also Mena-Robles, 4 F.3d at 1037, and the burden to prove actual vindictiveness resided with Correia.

In an attempt to demonstrate objective evidence of vindictiveness, Correia contends that the trial judge made comments during trial which suggested pique at Correia's decision to demand

Court cases can serve as definitive benchmarks. See Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002).

a jury trial. Quite the contrary, none of the comments even remotely suggested that the court intended to punish Correia for rejecting the plea agreement proffered prior to trial. In excluding Correia's "necessity" defense during the course of a motion hearing, the trial judge stated: "You were a one-man wrecking crew, and somehow this was justified in some way?" Rather than utilizing this statement to convey his view of Correia's guilt, the trial judge plainly and correctly chose to express the opinion that the far-fetched claim advanced by Correia – that he simply eluded police in self defense – was undeserving of credence by any rational factfinder. See United States v. Wasman, 700 F.2d 663, 666 (11th Cir. 1983) (noting that judge's evidentiary rulings, if correct on merits, normally are insufficient evidence of either bias or vindictiveness), aff'd, 468 U.S. 559 (1984); Commonwealth v. Pike, 701 N.E.2d 951, 958 (Mass. 1998) (noting that criminal defendant not entitled to "necessity defense" instruction absent competent evidence from which jury rationally could infer that he had no effective legal alternative for avoiding an imminent harm, other than to engage in criminal conduct for which he was charged).

In the other instance, the trial judge stated: "We are not going to start at the beginning of this thing and go through all the [police radio] transmissions, Mr. Correia, we have done that already." Far from an expression of displeasure that Correia was trying his own case, the trial judge obviously was advising the

-14-

<u>pro</u> <u>se</u> Correia – not an attorney – to refrain from introducing plainly repetitive evidence, thereby needlessly wasting judicial resources. See <u>Commonwealth</u> v. <u>Jackson</u>, 647 N.E.2d 401, 405 (Mass. 1995) ("[T]he judge [did not] prejudicially conduct the trial by limiting the introduction of cumulative evidence and excluding improper questions. No lenience is required on the part of the judge or prosecutor toward a <u>pro</u> <u>se</u> defendant.").

Finally, the court explained to Correia that the trial missteps resulting from Correia's decision to represent himself were the product of his own voluntary decision, notwithstanding the trial judge's contrary advice. See <u>id.</u> ("There is no judicial obligation to protect a <u>pro</u> <u>se</u> defendant from his lack of legal training."). Rather than suggesting that the trial judge dissuaded Correia from exercising his right to a jury trial, this observation plainly suggests that the trial judge had encouraged Correia to go to trial <u>with</u> <u>representation</u> <u>by</u> <u>counsel</u>.

As the Massachusetts Appeals Court reasonably could – and did – conclude that the sentence imposed upon Correia comported with the principles set forth in <u>Smith</u>, <u>see</u> 529 U.S. at 405, the habeas corpus petition was properly denied.

**<u>Affirmed</u>**.