COMMONWEALTH *vs.* JAMES FITZPATRICK.

Suffolk.    April 12, 1984. — May 4, 1984.

Present: GREANEY, C.J., ROSE, & BROWN, JJ.

*Practice, Criminal,* Instructions to jury, Question by jury. *Jury and Jurors. Identification.*

Where it appeared that there had been conflicting testimony at the trial of a robbery case as to when the victim had first mentioned a tear in the valise carried by the robber, the judge did not abuse his discretion in declining to answer a question on this point asked by the jury after about three hours of deliberation. [107-109]

At the trial of a robbery case in which defense counsel made a written request that the judge instruct the jury on the evaluation of identification testimony in the language suggested in *Commonwealth* v. *Rodriguez*, 378 Mass. 296 (1979), including the phrase "time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant," but asked that the judge omit the word "next" in giving the instruction, no reversible error resulted from the judge's failure to make the requested omission. [109-111]

INDICTMENT found and returned in the Superior Court Department on November 4, 1982.

The case was tried before *Mulligan*, J.

*Brownlow M. Speer* for the defendant.

*David B. Mark*, Assistant District Attorney, for the Commonwealth.

GREANEY, C.J. The defendant was convicted of robbery by a jury in the Superior Court. On appeal, he argues that the judge erred (1) in declining to answer a question posed by the jury during their deliberations which asked for certain testimony to be read or summarized and (2) in refusing to omit a word contained in the instructions for the evaluation of identification testimony recommended in *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979).

1. The trial focused on the reliability of the victim's identification of the defendant. An important element of that identification turned on when the victim first reported that a valise carried by the robber had a rip or tear in one of its handles.

The victim testified in his direct examination that the robber carried a "tannish gold" leather valise, "one of [the handles of which] looked like it was ripped." In cross-examination, the victim indicated that he had told the police when they responded to his call that he had "just been robbed [and] the guy had . . . a gold valise." Later in his cross-examination, the victim testified that he described the valise to the police "as [he had] previously told [the jury]."

The arresting officer testified on direct examination that the victim positively identified the defendant as the robber but that he was not sure that the victim had, at the time of the arrest, identified the valise. The officer further testified that the victim had identified the valise at the police station because while there "he [the victim] was talking about a tear." In cross-examination, the officer stated that it was his recollection that the first mention by the victim of a rip or tear in the valise occurred at the police station.

After deliberating for approximately three hours the jury sent the question set forth in the margin to the judge.[1] The judge answered the question by giving the jury the instructions set forth below.[2] Defense counsel initially agreed that the judge's answer was proper. Later, however, defense counsel (with the judge's approval) made a statement for the record suggesting that the information sought by the jury was undisputed and indicated that the tear in the valise was first mentioned

---

[1] "Did [the victim] mention the rip or tear in the valise before he saw it at the police station?"

[2] "Well, ladies and gentlemen of the jury, I will tell you that I can't help you in this area. This is something which you will have to decide for yourselves. It's your recollection, your memory of the evidence, and I cannot [recall], or go over the evidence with you. So, the short answer to what you ask is: I can't answer that. It's your collective recollection of the evidence. And I can't help you in that area.

"So I'd ask you, if you would, to go back and resume your deliberations in this case."

by the victim at the police station after the defendant's arrest.[3] Defense counsel then asked the judge so to advise the jury or to read the testimony on the point to them. The judge indicated that he was not sure that the relevant testimony was undisputed and declined to change his response to the jury.

Whether certain portions of trial testimony should be summarized or read for the jury upon their request during deliberations presents a matter for the judge's sound discretion, *Commonwealth* v. *Mandeville*, 386 Mass. 393, 404-405 (1982), which should be exercised "with caution." *Id.* at 405. See *Commonwealth* v. *Bianco*, 388 Mass. 358, 370 (1983). The defendant argues that the judge abused his discretion because the jury's request involved a single point of fact which was undisputed and highly material to the jury's consideration of the identification issue.[4]

Apart from defense counsel's failure to direct the judge's attention with clarity to the testimony he wished read or summarized,[5] it is apparent that the evidence on the point was not undisputed. The victim's testimony could have been found by the jury to indicate that he had mentioned the rip or tear in the

---

[3] The evidence was important. If the victim had described the valise as ripped or torn before the defendant's arrest the other factors in the victim's identification would have received strong corroboration. On the other hand, if the victim had made no mention of what could have been found to have been a striking feature of the valise, the absence of that particular could give reason to doubt the correctness of the victim's identification. Both the prosecutor and defense counsel vigorously argued the significance of the ripped valise to the jury.

[4] On this score, the defendant also points to the fact that approximately forty-five minutes after the judge instructed them on their question, the jury advised the judge by a note that they could not reach a unanimous verdict. The note indicated that nine jurors favored conviction and three jurors were inclined to acquit. At this juncture, the jury were excused for the night. The following morning the judge gave them the instructions recommended by *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973), to assist a deadlocked jury. Later in the afternoon a verdict of guilty was returned.

[5] Testimony concerning the rip or tear in the valise appears at five different parts of the transcript. In view of the onerous task that a search of the court reporter's notes would involve, we think counsel making such a request has an obligation to give the judge guidance as to where the relevant evidence lies.

valise to the police as part of his initial description of the robber. The police officer's testimony, on the other hand, could have led the jury to find that the victim described the rip or tear for the first time when he saw the valise at the police station. This conflict in the evidence created an issue solely for the jury to resolve. We think that if the judge had stepped in and read or summarized for the jury only the police officer's cross-examination testimony, part of the evidence would have been unfairly emphasized, and an improper intrusion on the jury's fact-finding function might have resulted. Leaving the jury to resort to their collective memories was, in the circumstances, a correct exercise of discretion.

2. In *Commonwealth* v. *Rodriguez*, 378 Mass. 296 (1979), the Supreme Judicial Court (at 310-311) set out a model instruction to assist a jury in the evaluation of identification testimony. The fifth factor mentioned in this instruction reads as follows:

> "If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the *next* opportunity of the witness to see the defendant, as a factor bearing on the reliability of the identification" (emphasis supplied).[6]

Defense counsel made a timely and specific written request for such an instruction but with the word "next" omitted from the portion quoted above. The judge gave the recommended instruction virtually word for word with a modification which will be discussed later in this opinion. At the conclusion of the charge, defense counsel objected to the judge's failure to make the change sought by his requested instruction.

---

[6] As indicated in *Rodriguez*, 378 Mass. at 310 n.1, the instructions are taken from instructions suggested by *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972).

It is contended that the quoted portion of the *Rodriguez* identification instructions, by reason of the word "next," has the effect of stating an ultimate fact, namely that the victim's identification of the defendant at the scene of the crime was accurate. In a case like this, argues the defendant, where the jury is troubled by the Commonwealth's proof of identification, see note 4, *supra,* any misimpression could be decisive. Having seasonably requested a clarifying instruction, the defendant urges that the damage is grave enough to require another trial.

The *Rodriguez* instructions are designed to underscore the importance of eyewitness identification, to emphasize the Commonwealth's heavy burden with respect to proof of that issue, and to furnish a set of practical criteria by which the jury can assess the quality of the identification testimony. The text of the instructions leaves little room for confusion or misapprehension by the jury on the central inquiry therein addressed: is the identification of the defendant as the perpetrator of the crime free of unnecessarily suggestive influences and compelling enough to support a verdict of guilty?

We have little doubt that the purpose of the instructions was accomplished in this case because the question asked by the jury focuses upon the objective features of the identification rather than upon any improper nuance that may be embedded in the *Rodriguez* instructions. Moreover, the judge went beyond the model in supplementing the criticized instruction.[7] In our

---

[7] The judge gave the passage under scrutiny in the following terms:

"Are you satisfied that the identification made by the witness subsequent, *after the offense,* was a product of his own recollection? Now, you may take into account both the strength of the identification and the circumstances under which the identification was made. If the identification — *this is the identification after the offense* — by the witness may have [been] influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant as a fact bearing upon the reliability of the identification". (Emphasis supplied.) The emphasized language had the effect of focusing the jury's attention on the postcrime identifications.

view, his supplementation corrects any possible defect in the principal charge. Taking the charge given here as a whole, we think it adequate. *Commonwealth* v. *Loretta*, 386 Mass. 794, 798-799 (1982).

We thus find no basis for reversal. We sense, however, that the language criticized by the defendant may lead some jurors to draw an unfair inference. We would consider it proper in the future for a judge, upon timely request by counsel, to consider rephrasing the quoted portion of the suggested charge to omit the word "next".[8] We note that at least two courts have made modifications in the *Telfaire* charge by eliminating the word "next," without directly discussing the problem. See *State* v. *Warren*, 230 Kan. 385, 398-400 (1981), and *People* v. *Lawrence*, 111 Misc.2d 1027, 1031-1032 n.4 (N.Y. Sup. Ct. 1981).

*Judgment affirmed.*

---

[8] The corrected sentence might also be modified to read as follows: "You may also consider the length of time that lapsed between the occurrence of the crime and the opportunity of the witness, some time after the occurrence of the crime, to see and identify the defendant as the offender, as a factor bearing on the reliability of the identification."