## COMMONWEALTH vs. STEPHEN R. WALKER.

Suffolk. May 2, 1995. - August 9, 1995.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Identification. Due Process of Law*, Identification, Hearing. *Evidence*, Expert opinion, Consciousness of guilt. *Practice, Criminal*, Instructions to jury, Argument by prosecutor, Comment by prosecutor, Comment by judge.

A judge's denial on the merits of a criminal defendant's motion to suppress identification evidence without an evidentiary hearing was not error where the defendant did not establish a triable issue of suggestiveness with respect to the identification. [94-96]

At the trial of indictments the judge properly within his discretion denied the defendant's motion for expert testimony on cross-racial identifications. [96]

At a criminal trial in which there was evidence of the defendant's having given false information about his identity to the police and in which there was no request for a consciousness of guilt instruction there was no error in the judge's exercise of discretion not to give such an instruction on his own motion. [96-97]

At a criminal trial, no substantial risk of a miscarriage of justice was created by the prosecutor's improper comment to the judge and the judge's response, regarding the pro se defendant's incorporating argument or statements of fact in his questions or objections, where the judge specifically instructed the jury not to draw any negative inference from the defendant's decision not to testify and where the proof of the defendant's guilt was strong. [97-99]

At a criminal trial, the judge's charge to the jury on identification, viewed as a whole, adequately apprised the jury of the weight to be given the identification of the defendant, and the judge's omission of a portion of the defendant's requested instruction on the issue taken from *Commonwealth* v. *Rodriguez*, 378 Mass. 296 (1979) [99-102], and his failure to give a requested instruction following the decision of *Commonwealth* v. *Fitzpatrick*, 18 Mass. App. Ct. 106 (1984) [102-103], did not create a substantial risk of a miscarriage of justice.

At a criminal trial, the prosecutor's inappropriate remarks in closing argument did not create a substantial risk of a miscarriage of justice, in

view of the prosecutor's entire argument, the judge's instructions, and the evidence at trial. [103-104]

The cumulative prosecutorial and judicial errors at a criminal trial did not give rise to a substantial risk of a miscarriage of justice in light of the strength of the Commonwealth's case. [104-105]


INDICTMENT found and returned in the Superior Court Department on February 14, 1991.

The case was tried before *Roger J. Donahue,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Regina Zupan,* Committee for Public Counsel Services, for the defendant.

*Austin J. Freeley,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant, Stephen R. Walker, was indicted for armed robbery of a Dunkin' Donuts restaurant in downtown Boston. Prior to trial, the defendant, pro se, moved to suppress both in-court and out-of-court identifications of him on the ground that the pretrial identification procedures were unnecessarily suggestive. No evidentiary hearing was held on the admissibility of the identification evidence. The trial judge denied the motion, and the case went to trial, the defendant appearing pro se. A jury found him guilty of armed robbery, and he was sentenced to a term of from nineteen to twenty years at the Massachusetts Correctional Institution at Cedar Junction.

The defendant appealed to the Appeals Court. The defendant asserted reversible error in (1) the judge's denial of his motion to suppress the victim's out-of-court and in-court identifications without having granted the defendant an evidentiary hearing; (2) the prosecutor's comment made in front of the jury to the effect that, if the defendant is going to testify, he should take the stand, and the judge's failure to give a curative instruction; (3) the judge's failure to give an instruction on the consciousness of guilt evidence; (4) the omission from the judge's identification instructions of the

admonition concerning the reliability of one-on-one confrontations, and the giving of an instruction which suggested to the jury that the defendant was the offender; (5) the prosecutor's closing argument which, the defendant contends, asked for the jury's sympathy for the victim, urged the jury to do justice for her, and appealed to the jurors' fears; and (6) the judge's denying him the right to present expert testimony on the reliability of cross-racial eyewitness identification testimony. The Appeals Court affirmed the defendant's conviction, 37 Mass. App. Ct. 1116 (1984), and in a memorandum and order issued pursuant to its Rule 1:28, concluded that the judge's denial of the defendant's motion to suppress identifications without an evidentiary hearing was not reversible error, that the judge did not abuse his discretion in denying the defendant the right to present expert testimony on the reliability of eyewitness identification testimony, and that the prosecutorial and judicial errors in the defendant's trial, taken alone or together, did not create a substantial risk of a miscarriage of justice. We granted the defendant's application for further appellate review. For the reasons stated in this opinion, we affirm the conviction.

The evidence before the jury was as follows. On November 26, 1990, Fatiha Elbachtany was working as the manager of a Dunkin' Donuts in downtown Boston. At about 12:30 P.M., a man came into the store and ordered a cup of coffee. He then told her that he had a gun and that he wanted money. The man had a newspaper draped over his arm, but she could see the silver barrel of a gun protruding from the paper. After Elbachtany was unable to retrieve enough money from the cash registers, the man came around the counter, grabbed her by the neck, pushed her into a back room, and made her open a safe. The man took about $1,600 from the safe and left. Elbachtany testified that, while they were in the back room, she was able to observe the robber for approximately four minutes.

Immediately after the robbery, Elbachtany reported it to the police. Within minutes, the police arrived at the Dunkin' Donuts. Elbachtany described the robber as "a light-skinned

black non-Hispanic male, approximately in his fifties, about six feet three inches, with a thin build, black-and-gray hair, bluish eyes, wearing a blue jacket."

On December 12, 1990, Elbachtany was working in a different Dunkin' Donuts in Boston. Around noontime, while she was in the back room, a coworker called out to her, in French, to come out front to look at someone. She went to the front of the store and saw a customer whom she believed to be the man who had robbed her on November 26. After the customer left the store, Elbachtany dialed "911." She told the dispatcher that she had been robbed about two weeks earlier and that she believed that she had just seen the robber. Shortly thereafter, the police arrived, and Elbachtany described the customer to them. She described him as "a black male with light blue eyes and a baseball cap, about forty-five to fifty years old."

The police went to the Aquarium subway station based on information that the customer had walked in that general direction. In the station, the police saw the defendant, Stephen R. Walker, seated in a train and concluded that he fit the description of the customer. The defendant was removed from the train, searched, handcuffed, and transported to the Dunkin' Donuts. As he was standing handcuffed beside the police cruiser at the curb accompanied by a police officer, Elbachtany identified the defendant as the robber from behind a plate glass door.[1]

Thereafter, the police took the defendant to the police station and booked him. During questioning, the defendant gave the police a false name and a false date of birth.

---

[1] On cross-examination, Elbachtany testified that, on December 12, after the defendant was brought back to the Dunkin' Donuts, and after she identified him as the robber, she had a conversation with the police in which she was told that the police had found a gun on the defendant. She was not informed that the "gun" was actually a cigarette lighter. In response to the defendant's question whether the conversation about the gun had any bearing on her identification of him as the robber, Elbachtany stated: "It didn't have anything to do with the identification, because I did it before he told me what he found on you."

Walker's defense was based on misidentification. He did not testify at trial, but presented witnesses who testified that on the date of the robbery at issue, as a result of an incident in which he had been attacked while on a bus, his face had been badly bruised and swollen and he had a black eye. These witnesses also testified that, on the date of the robbery, the defendant was in his early forties. They described the color of his eyes as "hazel" or "brownish." In addition, there was evidence at trial that, at the time of his arrest, the defendant had a moustache, and was wearing a derby hat with a brim that extended around the hat.

1. *Motion to suppress identifications.* Prior to trial, the defendant filed a motion to suppress the victim's out-of-court and in-court identifications of him on the ground that the show-up procedure held more than two weeks after the robbery was unnecessarily suggestive.[2] At the beginning of the trial, the defendant sought to have an evidentiary hearing on the motion to suppress. The judge heard brief argument on the motion, and then denied it without an evidentiary hearing. The denial was based both on the grounds of untimeliness as well as on the merits. We agree with the defendant that the motion was not filed late, but we conclude, nevertheless, that the judge's denial of the defendant's motion to suppress identification evidence on the merits without an evidentiary hearing was not error.

Under the due process clause of the Fourteenth Amendment to the United States Constitution, "an evidentiary hearing is not required whenever a defendant contends that an improper identification occurred." See *Commonwealth* v. *Simmons*, 383 Mass. 46, 47 (1981); *Commonwealth* v. *Riley*, 17 Mass. App. Ct. 950 (1983). We decide that a voir dire was not required.

As no voir dire was held, we consider the defendant's affidavit in support of his motion to determine whether it established a triable issue of suggestiveness. The defendant

---

[2]The defendant's motion did not challenge Elbachtany's in-court identification on independent grounds.

averred in his affidavit that he was subjected to a one-on-one showup confrontation with the victim while he was obviously in police custody. He further averred that the showup procedure occurred sixteen days after the robbery. He made no other representation that the confrontation was unduly suggestive.

We have repeatedly held that, although inherently suggestive, one-on-one confrontations in the immediate aftermath of a crime need not be suppressed. *Commonwealth* v. *Harris*, 395 Mass. 296, 299 (1985). *Commonwealth* v. *Barnett*, 371 Mass. 87, 92 (1976). The advantages of such an immediate identification override the suggestiveness of the setting such that the procedure constitutes sound police practice. "Such confrontations permit witnesses to view the suspect while recollection is fresh and before other images crowd in to distort the original picture . . . ." *Commonwealth* v. *Coy*, 10 Mass. App. Ct. 367, 371 (1980). "A . . . prompt confrontation yielding a negative result, besides freeing the innocent, informs the police that a possible predisposition on their part is or may be in error and releases them quickly to follow another track." *Commonwealth* v. *Barnett, supra.*

Here, there were sixteen days between the crime and the showup procedure. The defendant argues that the sixteen-day delay, not being in the immediate aftermath of a crime, did not tend to provide the benefits that justify a one-on-one showup. We disagree. As the Appeals Court observed, "[t]he confrontation took place . . . within minutes of Fatiha Elbachtany's chance observation of the robber, while his appearance on that occasion, at least, was still fresh in her mind and the procedure used, unlike a line-up, could have resulted in the defendant's immediate release. Moreover, the robbery was still fairly recent; Elbachtany had had an excellent opportunity to observe the robber; and she had provided a detailed identification, which the defendant fit." We believe the policy reasons favoring a showup procedure in the wake of a crime mirror those favoring a quick identification of a recently spotted, at-large suspect. We agree with the Appeals Court's determination that "[i]n the circumstances, the

judge would not have been warranted in suppressing the identification on the basis of the sixteen-day delay." An evidentiary hearing would have served no legitimate purpose. The denial of the defendant's motion to suppress the identifications without an evidentiary hearing was not error.

2. *Expert testimony.* The defendant contends that he was denied due process by the judge's failure to grant his motion for expert testimony on cross-racial identifications. Assuming favorably to the defendant that he has properly preserved his rights on this issue, we proceed to the merits.

The decision whether or not to allow the use of expert testimony as to the reliability of eyewitness testimony is within the discretion of the trial judge. *Commonwealth v. Francis,* 390 Mass. 89, 97-102 (1983). Here, the judge could reasonably have concluded in his discretion that the subject of cross-racial identifications was not "one on which the opinion of an expert would have been of assistance to the jury." *Id.* at 98. See *Commonwealth v. Middleton,* 6 Mass. App. Ct. 902 (1978) (Appeals Court found no abuse of discretion in the exclusion of "expert testimony regarding factors affecting the reliability of eyewitness identifications, including stress and the cross-racial nature of the identification"). See also *Commonwealth v. Charles,* 397 Mass. 1, 8 (1986) (no error in not instructing on cross-racial identifications), citing *United States v. Telfaire,* 469 F.2d 552, 561 (D.C. Cir. 1972) (Leventhal, J., concurring) ("[t]he issue of inter-racial identifications is not ripe for this kind of distillation of wisdom involving as it does a matter on which there is only 'meager data' and an assertion of 'common sense' views that merit further consideration"); *United States v. Brown,* 461 F.2d 134, 145-146 n.1 (D.C. Cir. 1971) (Bazelon, C.J., dissenting) ("data on this point is [*sic*] unfortunately meager"). There was no error.

3. *Consciousness of guilt.* The Commonwealth introduced evidence that, at booking, the defendant provided the police with a false name and date of birth. False statements to the police are "standard examples" of consciousness of guilt evidence. *Commonwealth v. Cruz,* 416 Mass. 27, 29 (1993), cit-

ing *Commonwealth* v. *Carrion*, 407 Mass. 263, 276 (1990). The prosecutor and the defendant discussed this consciousness of guilt evidence in their closing arguments. No request was made for any instructions on consciousness of guilt, and the judge made no mention of it in his instructions. The defendant did not object.

Trial of this case was completed on March 20, 1992. On August 3, 1993, this court decided *Commonwealth* v. *Cruz*, *supra*, and stated that, when consciousness of guilt evidence is admitted at a criminal trial, judges are required, sua sponte, to instruct the jury that they could not convict the defendant on the basis of evidence of consciousness of guilt alone, and that they may, but need not consider such evidence as one of the factors tending to prove the guilt of the defendant. *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982). Relying on *Cruz*, *supra*, the defendant claims that the failure to give an instruction on the consciousness of guilt evidence was error.

We do not agree. Recently, we reassessed our holding in *Commonwealth* v. *Cruz*, *supra* at 29-30, and concluded that "the better practice is not to require that a judge, on his or her own initiative, instruct on the subject. The matter is left to the sound discretion of the judge, and it will not be error if he or she chooses not to instruct on the subject in the absence of a request." *Commonwealth* v. *Simmons*, 419 Mass. 426, 436 (1995).

4. *Prosecutorial and judicial errors.* We proceed to discuss the occurrences in the defendant's trial which we conclude were prosecutorial and judicial errors. As the defendant did not object to any of the occurrences, we must consider whether they created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

a. *Comment on the defendant's failure to testify.* When the prosecutor offered in evidence a replica of a gun which the police had seized from the defendant on December 12, the defendant made an appropriate objection based on relevancy. In expressing his objection, the defendant argued in

open court: "[T]here's no doubt that I had that article in my possession on 12-12, but . . . the alleged robbery occurred three weeks prior to 12-12, and I'm trying to ascertain the relevance of . . . what this gun has to this particular crime. I don't see any connection, your Honor." When the defendant finished making his objection, the prosecutor said, before the jury: "Your Honor, I would move to strike my brother's testimony as not being in the form of a question; rather, being testimony. And ask that if he is going to testify, that he take the stand." In response to the prosecutor's comment, the judge stated, in open court: "Well, I have a difficult job enough, counsel, without a side-bar conference with pro se counsel." The defendant made no objection, and the judge made no attempt to cure the prosecutor's comments.

In making this comment, the prosecutor was obviously complaining about the defendant's trial tactics. On several prior occasions during cross-examination of Commonwealth witnesses, the defendant, acting pro se, personally argued his case to the jury. On this occasion, the defendant was incorporating a statement of fact into his objection, and the prosecutor sought to direct the judge's attention to the impropriety. Nevertheless, the prosecutor's comment might have suggested to the jury that the defendant had an obligation to testify. Such comment, made in open court, was improper. See *Commonwealth* v. *Smith*, 387 Mass. 900, 908-909 (1983). Moreover, rather than correcting the error, the judge may have exacerbated the prosecutorial impropriety by responding in front of the jury that his job was difficult enough, "without a side-bar conference with pro se counsel."

We do not believe, however, that the prosecutor's and judge's remarks gave rise to a substantial risk of a miscarriage of justice. The judge's instructions at the close of the evidence specifically warned the jury not to draw any negative inferences from the defendant's decision not to testify, and they repeatedly placed the burden of proof on the Commonwealth. See *Commonwealth* v. *Phoenix*, 409 Mass. 408, 427 (1991), quoting *Commonwealth* v. *Smith*, 387 Mass. 900, 908 (1983); *Commonwealth* v. *Ferreira*, 381 Mass. 306,

316 (1980) (although prosecutor's remarks were "reasonably susceptible of being interpreted as a comment on [the defendant's] failure to take the stand," a new trial was not required because the judge's instructions "were sufficiently clear and complete to negate any possible prejudice to the defendant"). In addition, during his final instructions, the judge specifically praised the defendant's efforts in representing himself and told the jury to disregard his or anyone's personality during the trial. Finally, in view of the Commonwealth's strong proof of the defendant's guilt, reversal is not warranted. See *Commonwealth* v. *Hooks*, 375 Mass. 284, 297 (1978) (substantial proof of defendant's guilt rendered prosecutor's improper remarks harmless).

b. *Instructions on identification.* In *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979), we prescribed a model jury instruction to be given in eyewitness identification cases. The purpose of the *Rodriguez* instruction is to emphasize the importance of eyewitness identifications, inform the jury of the Commonwealth's heavy burden of proof as to the accuracy of the identification, and to furnish the criteria by which the jury can assess the quality of the identification. *Commonwealth* v. *Fitzpatrick*, 18 Mass. App. Ct. 106, 110 (1984). The *Rodriguez* instruction addresses the question, "Is the identification of the defendant as the perpetrator of the crime free of unnecessarily suggestive influences and compelling enough to support a verdict of guilty?" *Id.*

The *Rodriguez* instruction also includes language which addresses the situation of a suggestive one-on-one confrontation:

> "You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness."

*Commonwealth* v. *Rodriguez, supra* at 311. In the present case, the defendant made a written request for that instruc-

tion. During the charge conference, the judge informed the defendant that he would give the defendant's requested instructions. In his charge, however, the judge omitted the above-quoted portion of the *Rodriguez* instruction. The omission was not the subject of an objection. Relying on *Commonwealth* v. *Cuffie*, 414 Mass. 632, 639-640 (1993), the defendant claims that, because he made a proper written request for this portion of the *Rodriguez* instruction, he was entitled to have it given to the jury. Its omission, he argues, created a substantial risk of a miscarriage of justice. The Commonwealth argues in response that there was no reversible error because, viewing the judge's identification instructions as a whole, they apprised the jury of the weight to be given the identification of the defendant. We agree with the Commonwealth. The judge's charge, as a whole, adequately covered the issue.[3] It apprised the jurors of the possibility of

---

[3]The judge instructed the jury as follows regarding identification:

"An important issue in this case is the identification of the defendant as the person who committed the crime. The prosecution must prove the identity beyond a reasonable doubt. It is not essential that the witness herself be free from doubt as to the correctness of her statement; however, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you can convict him.

"If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

"Identification testimony, which we had in this case, is an expression of belief or impression by a witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and make a reliable identification later.

"In appraising identification testimony, you can consider the following: Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender? Whether the witness had an adequate opportunity to observe the offender at the time of the offense would be affected by such matters as how long, or how short, a time was available; how far or close the witness was; how good were the lighting conditions; whether the witness had had the occasion to see or know the person in the past.

"In general, a witness bases any identification she makes from her perception through the use of her senses. Usually a witness identifies

mistake and it informed them that they should "scrutinize
. . . with great care" the circumstances in which the identifi-
cation was made. Contrary to the defendant's contention,
there is not a substantial risk of a miscarriage of justice. See
*Commonwealth* v. *McMaster,* 21 Mass. App. Ct. 722, 727-
728 (1986) (holding there was no substantial risk of miscar-
riage of justice where identification was most important issue
in case and trial judge omitted four portions of *Rodriguez*
charge, including portion challenged at bar).

---

an offender by the sense of sight, but this is not necessarily so. She
may use other senses.

"Are you satisfied that the identification made by the witness,
subsequent to the offense, was the product of her own recollection?
You may take into account both the strength of the identification
and the circumstances under which the identification was made. You
may consider the possibility of a mistaken identification, that the
witness is honestly mistaken, that she made a good-faith error.

"If the identification by the witness may have been influenced by
the circumstances under which the defendant was presented for
identification, you should scrutinize the identification with great
care.

"You may also consider the length of time that lapsed between
the occurrence of the crime and the opportunity of the witness there-
after to see the offender and identify him or her, him in this case, as
the offender as a factor bearing on the reliability of the
identification.

"You may take into account any occasion on which the witness
failed to make an identification of the defendant, or made an identi-
fication that was inconsistent with the identification here at trial.

"Finally, you must consider the credibility of an identification wit-
ness in the same way as any other witness; consider whether she is
truthful, and consider whether she had the capacity and opportunity
to make a reliable observation on the matter covered in her
testimony.

"I again emphasize that the burden of proof on the prosecutor
extends to every element of the crime charged, and this specifically
includes the burden of proving beyond a reasonable doubt the iden-
tity of the defendant as the perpetrator of the crime for which he
stands charged.

"If, after examining the testimony, you have reasonable doubt as
to the accuracy of this identification, you must find the defendant
not guilty."

The defendant next points out that an error was made in the course of the judge's identification instructions regarding the length of time between the crime and the witness's identification of the defendant as the offender. One portion of the *Rodriguez* instruction directs the jury to "consider the length of time that lapsed between the occurrence of the crime and the *next* opportunity of the witness to see the *defendant*, as a factor bearing on the reliability of the identification" (emphasis added). *Commonwealth* v. *Rodriguez, supra*. This language has been disapproved because it improperly suggests that the defendant is indeed the offender. *Commonwealth* v. *Cuffie, supra* at 640-641.[4] *Commonwealth* v. *Fitzpatrick, supra* at 111. In the case at bar, the defendant requested an instruction which cured the flaw identified in *Fitzpatrick*.[5] The judge did not give the requested instruction. Instead, the judge gave an instruction which modified the *Rodriguez* language but failed to correct the underlying flaw. The judge instructed as follows:

> "You may also consider the length of time that lapsed between the occurrence of the crime and the *opportunity of the witness thereafter to see the offender and identify him or her, him in this case, as the offender* as a factor bearing on the reliability of the identification" (emphasis added).

---

[4]In *Commonwealth* v. *Fitzpatrick*, 18 Mass. App. Ct. 106 (1984), the Appeals Court recommended a change to the pattern *Rodriguez* instruction, and in *Commonwealth* v. *Cuffie*, 414 Mass. 632 (1993), we agreed that the suggested change should be made. The revised instruction reads as follows:

> "You may also consider the length of time that lapsed between the occurrence of the crime and the opportunity of the witness, some time after the occurrence of the crime, to see and identify the defendant as the offender, as a factor bearing on the reliability of the identification."

[5]The defendant's requested instruction on this point was as follows: "You should also give consideration to the length of time that elapsed between the said occurrence of the crime, an[d] the rendering of the identification as a factor bearing on the reliability of the identification."

The error was not brought to the judge's attention by a timely objection. The defendant now argues that the combined effect of the judge's failure to give the suggested instruction set forth in *Fitzpatrick*, and the judge's omission of the admonition that showups are less reliable than lineups, created a substantial risk of a miscarriage of justice. We disagree. "Although the instructions varied from those recommended in *Cuffie, supra*, the identification instructions as a whole apprised the jury that the identification of the defendant was subject to error and suggestion." *Commonwealth* v. *Jackson*, 419 Mass. 716, 732-733 (1995). We can discern no substantial likelihood that the judge's instructions on identification resulted in a miscarriage of justice.

c. *The prosecutor's closing argument.* The prosecutor argued as follows:

> "Ladies and gentlemen, [the victim] was robbed of much more than just the Dunkin' Donuts' money. She was robbed of her personal safety and security, her right to work in downtown Boston in broad daylight without being assaulted with a gun by [the defendant]. And unlike the money, her feelings of safety and security can never be replaced. But [the victim] has faith in this system, and you, the jurors, the foundation of that system. And that's why we're here today. And though by your verdict you cannot replace her security and her safety, you can, and you will, do justice."

These remarks were inappropriate. See, e.g., *Commonwealth* v. *Graziano*, 368 Mass. 325, 332 (1975) (prosecutor's comments may not be calculated to play on jury's sympathy or emotions or to "sweep the jurors beyond a fair and calm consideration of the evidence"); *Commonwealth* v. *Cobb*, 26 Mass. App. Ct. 283, 286 (1988) (prosecutor's arguments should not suggest to jury that they have duty to vindicate victim through guilty verdict).

Nevertheless, we do not believe that the effect was so prejudicial as to warrant a new trial. The defendant did not

make a timely objection to the comments. "The absence of objection by defense counsel during or after argument may provide some guidance as to whether a particular argument was prejudicial in the circumstances." *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 n.8 (1987). This is especially true, where, as here, contemporaneous objections were made to the prosecutor's summation.[6]

At the outset of the trial, the judge informed the jurors that they would "make their findings of fact upon the evidence and nothing else." That mandate was reiterated throughout the judge's charge, and the judge instructed the jury that the closing arguments were not evidence. The jurors were also reminded that the defendant was presumed innocent until proved guilty beyond a reasonable doubt. We presume that a jury understand and follow such limiting instructions. *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981).

Viewing the prosecutor's remarks in light of the entire argument, as well as the judge's instructions to the jury and the evidence at trial, there is no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Costa*, 414 Mass. 618, 628 (1993).

d. *Whether the combination of errors created a substantial risk of a miscarriage of justice.* The final inquiry is whether the prosecutorial and judicial errors, measured cumulatively, created a substantial risk of a miscarriage of justice. The Appeals Court determined that the errors, considered alone or in combination, did not give rise to a substantial risk of a miscarriage of justice. The court reasoned: "We regard the [Commonwealth's] case . . . as considerably stronger than the usual one in which a single eyewitness to a crime makes an identification after a one-on-one showup. Elbachtany was in the presence of the robber for five minutes and had a good opportunity to observe his ap-

---

[6]The defendant objected to the prosecutor's closing argument on two occasions. Both objections were made in response to the prosecutor's references to the defendant's witnesses. He failed, however, to object to any of the remarks which he now claims were unfairly prejudicial.

pearance. She immediately gave the police a detailed description. She identified as the robber a person fitting that description sixteen days later, not after a showup arranged by the police, but when he happened to patronize another Dunkin' Donuts where she was working. She watched the person she had recognized walk toward an MBTA station, and the defendant was arrested in the station almost immediately afterward. What gives the case unusual strength, in our view, is the defendant's distinctive appearance — tall, thin, greying hair, aging, black, with light greenish eyes. That the defendant, if innocent, should be on a train in the station at the exact moment the police were looking for a man fitting his description, and, according to one witness, carrying a Dunkin' Donuts bag, would be an extraordinary coincidence. . . . Thus, we regard it as most unlikely that any of the errors had a material effect on the jury's verdict."

Our review of the record persuades us that the Appeals Court is correct. We conclude that the combined effect of the prosecutorial and judicial errors was not sufficiently prejudicial to create a substantial risk of a miscarriage of justice.

*Judgment affirmed.*