NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1649                                          Appeals Court

COMMONWEALTH  vs.  PETER PEARSON.

No. 13-P-1649.

Plymouth.     November 3, 2014. - August 4, 2015.

Present:  Green, Wolohojian, & Blake, JJ.


Rape.  Practice, Criminal, Motion to suppress, Severance.
    Identification.  Constitutional Law, Identification, Search
    and seizure.  Due Process of Law, Identification.
    Evidence, Identification, First complaint.  Search and
    Seizure, Automobile, Consent, Inevitable discovery,
    Inventory.



    Indictments found and returned in the Superior Court
Department on November 21, 2008.

    A motion to sever was heard by Joseph M. Walker, III, J.,
motions to suppress evidence were heard by Richard J. Chin, J.,
and the cases were tried before Frank M. Gaziano, J.


    R. Bradford Bailey for the defendant.
    Mary E. Lee, Assistant District Attorney, for the
Commonwealth.

GREEN, J.  On appeal from his convictions of five counts of aggravated rape, and related charges,[1] the defendant claims error in (i) the denial of his motion to suppress out-of-court identifications made by one of his victims in a one-on-one showup, and by his other victims from photographic arrays; (ii) the denial of his motion to suppress evidence seized during a search of the trunk of his car; (iii) the admission of testimony regarding a first complaint made by one of his victims; and (iv) the denial of his motion to sever the various charges for trial. We affirm.

Background.  We summarize the findings of fact made by the motion judge in his thorough written memorandum of decision on the defendant's motions to suppress.[2]  On July 1, 2008, Brockton police arrested Stephanie Smith[3] for being a common night walker. See G. L. c. 272, § 53; Thomes v. Commonwealth, 355 Mass. 203, 207 (1969).  The following day, Smith reported to Officer Amaral of the Brockton police department that she had been raped by a

---

[1] The defendant was also convicted of four counts of kidnapping (two as lesser included offenses of aggravated kidnapping), four counts of impersonating a police officer, two counts of indecent assault and battery, and one count of armed assault with intent to rape.  He was acquitted of two counts of assault by means of a dangerous weapon.

[2] We shall set out additional evidence later during our discussion of the defendant's other claims of error.

[3] A pseudonym.

State Trooper.  Later, in a statement she gave to Brockton police Detective Erin Cummings, she elaborated that about one week earlier she had gotten into a small silver four-door vehicle in the area of Haverhill Street, driven by a man who took her to D.W. Field Park and forced her at gunpoint to perform oral sex on him.  The man (whom she described as approximately five feet, four inches tall, with bright blue eyes and grayish hair) told her he was a State Trooper, showed her a badge, and had a hand-held radio with an earpiece.  The man also told Smith that he would be watching her.

On August 18, 2008, Brockton police Officer Michael Scanlon was on patrol in the area of North Main Street and Spring Street when he was flagged down by Smith's boyfriend, to whom we shall refer as Ronald.  Ronald told Scanlon that his girlfriend previously had been raped at gunpoint, and had just seen the rapist driving a gray Oldsmobile automobile; Ronald gave Scanlon the license plate number from the Oldsmobile.  Scanlon ran the license plate number through his on-board computer and learned that the plate was registered to a gray Oldsmobile owned by the defendant.  The registry of motor vehicles record Scanlon viewed also included a photograph of the defendant.

While Scanlon was running the license plate, the defendant drove past Scanlon's cruiser in the gray Oldsmobile, traveling in the opposite direction along North Main Street.  Scanlon

pursued the vehicle in his cruiser and pulled it over. Scanlon ordered the defendant out of the car, pat frisked him, and placed him in handcuffs. Scanlon thereafter called for back-up, and two plainclothes officers arrived in an unmarked car. Scanlon advised them that he had administered Miranda warnings to the defendant, and then left the defendant in the custody of the two officers while he went to retrieve Ronald and Smith. Shortly thereafter, the two plainclothes officers were joined by a uniformed officer, Richard Gaucher.

Gaucher asked the defendant if he had a gun, and the defendant responded "no." The defendant then gestured and said the officers could "search his car if [they]'d like, including the trunk." One of the officers looked in the trunk, where he found a new firearm trigger lock, still in its original packaging. Inside the passenger compartment, in a pocket on the back of the front passenger seat, Gaucher found a hand-held radio with the letters "BFD" on it, a wallet holding the defendant's Boston fire department identification card and badge, a mobile telephone, a five-dollar bill, and a brown wallet.

Scanlon radioed that he was returning with Smith for a showup identification. The officers holding the defendant uncuffed him and directed him to stand in front of a building directly across the street; the officers stood about ten to

fifteen feet away, to the defendant's left and right. After reading instructions to Smith from a card,[4] Scanlon drove her to the location where the defendant was waiting with the other officers. Scanlon stopped his cruiser in a position facing the defendant, at a distance of about thirty feet. As he began again to give instructions to Smith, she blurted out, "that's him," and identified the defendant as the man who had raped her. She told Scanlon that she was "one hundred percent sure." She also identified the gray Oldsmobile as the vehicle the defendant was driving when he picked her up.

Following the defendant's arrest, after seeing televised news coverage including a photograph of the defendant, four

---

[4] In his testimony at the motion hearing, Scanlon read from the same card, as follows:

"'You're going to be shown an individual, this may or may not be the person who committed the crime, so you should not feel compelled to make an identification. It is just as important to clear innocent people as it is to identify possible perpetrators. Whether or not you identify someone, the police will continue to investigate. After you're done, I will not be able to provide you with any feedback or comment on the result of the process. Please do not discuss the identification procedure or the results with other witnesses in the case or with the media. I want you to think back to the time of the event, place, your view, lightning -- lighting, your frame of mind. Take as much time as you need. People may not appear exactly as they did at the time of the event because features such as clothing, facial hair, are subject to change. And as you look at this person, tell me if you recognize him or her -- him.' I'm sorry. 'If you do, please tell me how you know the person in -- in your own words and how sure you are."

other women (each of whom had been soliciting sexual activity for a fee at the time of their assaults) reported that the defendant had raped them. Each of these victims thereafter selected the defendant's photograph from a photographic array presented to them by the police.[5]

Discussion. 1. Showup identification. One-on-one showup identifications "are disfavored because they are viewed as inherently suggestive." Commonwealth v. Austin, 421 Mass. 357, 361 (1995). See Commonwealth v. Johnson, 420 Mass. 458, 461 (1995); Commonwealth v. Martin, 447 Mass. 274, 279 (2006). See generally Mass. G. Evid. § 1112(c) (2014). "Nonetheless, a one-on-one pretrial identification raises no due process concerns unless it is determined to be unnecessarily suggestive." Commonwealth v. Austin, supra. Such an identification is permissible if good reason to support it exists in the circumstances in which it occurs. Ibid. "Relevant to the good reason examination are the nature of the crime involved and corresponding concerns for public safety; the need for efficient police investigation in the immediate aftermath of a crime; and the usefulness of prompt confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track." Id. at 362. "It is

_____

[5] The four victims first were given instructions substantially similar to those Scanlon gave to Smith.

the defendant's burden to prove by a preponderance of the evidence that the showup was 'so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [him] due process of law.'" Commonwealth v. Martin, supra at 279-280, quoting from Commonwealth v. Odware, 429 Mass. 231, 235 (1999).

As the defendant observes, the showup procedure employed in the present case did not occur in the immediate aftermath of the crime; instead fifty-three days had elapsed between the rape and the showup identification. However, in that respect the circumstances of the present case are similar to those in Commonwealth v. Walker, 421 Mass. 90, 95 (1995). In Walker, the victim of a robbery (a worker at a Dunkin' Donuts store) saw the defendant sixteen days after the robbery, in a different Dunkin' Donuts store at which she was working, and called police to report that she had just seen the man who previously had robbed her. Id. at 92-93. Shortly thereafter, based on the description furnished by the victim to officers responding to the call, police apprehended the defendant and brought him back to the Dunkin' Donuts store, where the victim identified him in a one-on-one showup. Id. at 93. In affirming the denial of the defendant's motion to suppress, the court observed that "'[t]he confrontation took place . . . within minutes of [the victim's] chance observation of the robber, while his appearance, on that

occasion, at least, was still fresh in her mind and the procedure used, unlike a line-up, could have resulted in the defendant's immediate release. Moreover, the robbery was still fairly recent; [the victim] had had an excellent opportunity to observe the robber; and she had provided a detailed identification, which the defendant fit.' We believe the policy reasons favoring a showup procedure in the wake of a crime mirror those favoring a quick identification of a recently spotted, at-large suspect." Id. at 95, quoting from the unpublished memorandum and order of the Appeals Court issued pursuant to rule 1:28 in the same case, 37 Mass. App. Ct. 1116 (1994).[6]

The defendant in the present case makes much of the fact that the time elapsed between the crimes and subsequent identification was fifty-three days, rather than the sixteen days elapsed in Walker. As the foregoing discussion from Walker makes plain, however, it is the short time elapsed between the victim's report of a later chance encounter with the defendant and the showup identification that carries the greatest weight in assessing the reasonableness of the procedure. It is important to note that in both Walker and the present case the encounter giving rise to the report, leading in turn to the

---

[6] To the same effect is Commonwealth v. Mattias, 8 Mass. App. Ct. 786, 788-789 (1979).

apprehension and showup procedure, occurred spontaneously, and that the victim identified the defendant as her assailant out of the world at large; nothing about the circumstances in which the victim spontaneously recognized the defendant, and thereafter (with Ronald's assistance) reported her observation to police, was shown to be suggestive. In addition, the victim observed her assailant at close range and for an extended period at the time of the assault. Though the time elapsed between the crimes and the chance encounter was longer in the present case than in Walker, it was not so long as to cause undue concern over the victim's ability to recognize her rapist upon encountering him unexpectedly on the street.[7] There was no error in the denial of the defendant's motion to suppress Smith's identification of him in the one-on-one showup procedure.

2. Photographic array identifications. As observed in the introduction, following the defendant's arrest, television news coverage of the arrest, which included the defendant's photograph, prompted four other victims to report to police that

---

[7] We also note that, though the identifications in the present case preceded the opinion of the Supreme Judicial Court in Commonwealth v. Silva-Santiago, 453 Mass. 782, 797-798 (2009), the instructions Officer Scanlon administered to Smith before she identified the defendant, see note 4, supra, were consistent with the protocol announced in that case. Compare Commonwealth v. Meas, 467 Mass. 434, 443 (2014); Commonwealth v. Gomes, 470 Mass. 352, 385-387 & n.20 (2015); Commonwealth v. Bresilla, 470 Mass. 422, 435 (2015).

he also had raped them. Following their reports, each of these victims selected the defendant's photograph from an array of photographs of generally similar-looking men (photo array). Absent evidence of manipulation by police of press reports, "simple exposure to the media is not sufficient ground to suppress an identification [on constitutional grounds]." Commonwealth v. Jules, 464 Mass. 478, 489 (2013), quoting from Commonwealth v. Horton, 434 Mass. 823, 835 (2001).[8] The defendant's criticisms that the photographs in the arrays were presented simultaneously, rather than sequentially, and that "double blind" procedures were not employed, furnish no cause, without more, for suppression under current Massachusetts law.[9] See Commonwealth v. Silva-Santiago, 453 Mass. 782, 797-799

---

[8] The defendant offered no evidence at the motion hearing about the television news reporting the other victims saw; accordingly, the record furnishes no basis to support a claim by the defendant that the news reporting itself was so unnecessarily suggestive that common law principles of fairness might require suppression. See Commonwealth v. Jones, 423 Mass. 99, 108-109 (1996). Similarly, the defendant has presented no evidence to support his assertion that the photograph of the defendant appearing in the arrays used for identification was the same as the photograph appearing in the television news coverage.

[9] There is also no merit to the defendant's claim that the trial judge erred in allowing the victims to testify regarding their certainty in their identifications of the defendant. See Commonwealth v. Cruz, 445 Mass. 589, 595-596 (2005).

(2009); Commonwealth v. Walker, 460 Mass. 590, 602-603 (2011).[10] The motion judge correctly denied the motion to suppress the other victims' identifications of the defendant from photo arrays.[11]

3. Search of the defendant's car. The motion judge denied the defendant's motion to suppress evidence seized from his car on several independent grounds (including consent). We need not address them separately, as we agree with the judge that the items recovered from the defendant's car would inevitably have been discovered pursuant to an inventory search (conducted following the defendant's arrest based on the victim's identification of him as the man who had raped her), pursuant to the written inventory policy admitted in evidence at the motion hearing. See Commonwealth v. O'Connor, 406 Mass. 112, 115-119 (1989).[12]

---

[10] As we have observed, the photo array identifications in the present case occurred before adoption of the identification protocol announced in Silva-Santiago. See note 7, supra.

[11] Because there was no error in the showup or photo array identifications, those procedures did not taint the victims' in-court identifications of the defendant.

[12] Though the search was investigatory at the time it occurred, that does not derogate from the fact that, in the circumstances of this case, the items inevitably would have been discovered pursuant to a permissible inventory search upon the defendant's arrest. Contrast Commonwealth v. Benoit, 382 Mass. 210, 219 (1981).

4. <u>First complaint</u>.  The defendant contends that, because the only issue at trial was identification, the trial judge improperly admitted first complaint testimony in evidence.[13]  See <u>Commonwealth</u> v. <u>King</u>, 445 Mass. 217, 219 (2005), cert. denied, 546 U.S. 1216 (2006) ("First complaint testimony is not relevant and therefore not admissible under the doctrine where neither the fact of the sexual assault nor the complainant's consent is at issue, as in cases where the identity of the assailant is the only contested issue").  Assuming, without deciding, that the defendant's general objection at trial sufficiently preserved the issue for appeal, there is no merit to the argument because its foundational premise -- that the identity of the rapist was the sole issue before the jury -- is false.  Beginning with the defendant's opening statement and continuing throughout the trial, defense counsel sought to challenge the victims' credibility, suggesting that the alleged rapes did not occur and that the victims instead fabricated the allegations against the defendant in an effort to bring attention to a common risk in their profession.

5. <u>Joinder</u>.  Finally, there is no merit in the defendant's contention that the motion judge erred in denying his motion to sever the charges involving the several victims.  "Joinder is a

_____

[13] The only such evidence was that given by Smith's boyfriend Ronald.

matter committed to the sound discretion of the trial judge, Commonwealth v. Sullivan, 436 Mass. 799, 803 (2002), and 'will not be reversed unless there has been "a clear abuse of discretion."'" Commonwealth v. Aguiar, 78 Mass. App. Ct. 193, 198 (2010), quoting from Commonwealth v. Pillai, 445 Mass. 175, 180 (2005). "[T]o prevail on a claim of misjoinder, the defendant 'bears the burden of demonstrating that the offenses were unrelated, and that prejudice from joinder was so compelling that it prevented him from obtaining a fair trial." Commonwealth v. Pillai, supra, quoting from Commonwealth v. Gaynor, 443 Mass. 245, 260 (2005). For purposes of joinder, "[o]ffenses are related if 'the evidence in its totality shows a common scheme and pattern of operation that tends to prove' each of the complaints." Commonwealth v. Pillai, supra, quoting from Commonwealth v. Feijoo, 419 Mass. 486, 494-495 (1995). In addition, "the propriety of joining offenses for a single trial often turns on whether evidence of the other offenses would be admissible in separate trials on each offense." Commonwealth v. Pillai, supra.

The evidence in the present case supported the motion judge's conclusion that the defendant's conduct with each victim displayed a common scheme or modus operandi. In each case, the victims were prostitutes. The defendant told at least four of the victims that he was a police officer. He either forced or

attempted to force each victim to perform oral sex on him.  Each act occurred in the defendant's car, while parked in a public place.  Each victim met the defendant in Brockton, and the assaults occurred either in Brockton or in the neighboring town of Avon.  The defendant approached three of the victims after the sexual assaults to tell them he had been watching them.  In addition, he demonstrated to two of the victims that he knew personal information about them.  In these circumstances, the fact that the assaults occurred over an eleven-year span does not negate a conclusion that they were part of a common scheme or displayed a modus operandi.  We discern no abuse of the motion judge's considerable discretion in his conclusion that the assaults were sufficiently related to justify joinder.[14]

> Judgments affirmed.

---

[14] Our conclusion that the judge permissibly found the assaults sufficiently related to justify joinder obviates the need to assess prejudice from the joinder.  However, as described in note 1, supra, the jury acquitted the defendant of two of the charges and in two instances found guilt of a lesser offense.  See, e.g., Commonwealth v. Ramos, 63 Mass. App. Ct. 379, 382 (2005).